647 So.2d 1192 (1994)
Saint T. THOMAS and Patsy Thomas, Individually and As Husband and Wife, Plaintiffs-Appellants,
v.
T.J. GOODSON and VASA North Atlantic Insurance Company, Defendants-Appellees.
No. 26356-CA.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1994.
*1193 Jack M. Bailey, Jr., Shreveport, for plaintiffs-appellants, Saint T. Thomas and Patsy Thomas.
Lunn, Irion, Johnson, Salley & Carlisle by James A. Mijalis, Shreveport, for defendant-appellee, VASA North Atlantic Insurance Co.
Before SEXTON, LINDSAY and HIGHTOWER, JJ.
SEXTON, Judge.
Plaintiffs, Saint T. Thomas and Patsy Thomas, husband and wife, filed suit for damages against their insurer, VASA North Atlantic Insurance company ("VASA") for uninsured motorist coverage ("UM coverage") arising out of an automobile accident with defendant, T.J. Goodson, an uninsured motorist. VASA moved for summary judgment on grounds that the insured, Patsy Thomas, rejected UM coverage in her policy application. From a summary judgment dismissing the plaintiffs' demands against VASA with prejudice, the plaintiffs appeal. We affirm.
As a result of a rear-end collision on January 22, 1993, with an uninsured motorist, plaintiffs filed suit against their insurer, VASA, claiming UM coverage. VASA moved for summary judgment of grounds that there was no insurance policy issued by them containing uninsured motorist coverage in effect at the time of the accident. This contention was supported by an affidavit from Mr. Jim LeVert, an assistant claims manager for Sierra Claims Service, Inc., who handles claims for VASA. Therein he states that the VASA liability policy issued to Patsy Thomas, which was in effect at the time of the accident, did not provide for UM coverage and that there was no policy of insurance whatsoever issued to Saint T. Thomas that provided UM coverage.
Plaintiffs opposed defendant's motion on grounds that the rejection of UM coverage by Patsy Thomas was legally ineffective both as a matter of law and because of the factual circumstances surrounding the rejection. Plaintiff, Patsy Thomas, submitted an affidavit that essentially asserts that she had no idea that she was signing a rejection of UM coverage because the check marks rejecting UM coverage were not filled out by her. She claims she was simply given the application and told where to sign without any discussion of UM coverage. Nevertheless, the trial court found that, in light of the uninsured motorist rejection language contained in the application executed by Patsy Thomas, there were no genuine issues of material fact and rendered judgment in favor of VASA.
Plaintiffs appeal, alleging that the trial court erred in finding that there were no issues of material fact precluding summary judgment and that the trial court erred in finding that VASA was entitled to a judgment as a matter of law. The issues in this case are whether the affidavit submitted by plaintiff, Patsy Thomas, in opposition to defendant's motion for summary judgment, creates a disputed issue of material fact that precludes summary judgment, and whether, as a matter of law, the written rejection of UM coverage signed by Patsy Thomas meets the statutory and jurisprudential requirements for an effective rejection.
Appellate courts review the granting of a summary judgment de novo under the same criteria governing the trial court's consideration of whether a summary judgment is appropriate. Under LSA-C.C.P. Art. 966, a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue of material fact and mover is entitled to judgment as a matter of law. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). A dispute as to the issue of whether, as a matter of law, an insurance policy provides or precludes coverage to a party can be properly resolved within the framework of a *1194 motion for summary judgment. Garcia v. Certified Lloyds Insurance Co., 598 So.2d 1278 (La.App. 4th Cir.1992), writ denied, 604 So.2d 969 (La.1992).
LSA-R.S. 22:1406(D) requires insurers to provide uninsured motorist coverage in not less than the limits of bodily injury liability coverage provided by the policy. UM coverage is not required when the insured named in the policy rejects in writing the coverage. A valid rejection must be in writing and signed by the named insured or his legal representative. The insurer must place the insured in a position to make an informed rejection of UM coverage. The form used by the insurance company must give the applicant the opportunity to make a meaningful selection from his options provided by statute: (1) UM coverage equal to bodily injury limits in the policy; (2) UM coverage lower than bodily injury limits in the policy; or (3) no UM coverage. Tugwell, supra.
The purpose of UM legislation is to promote full recovery for innocent automobile accident victims by making UM coverage available for their benefit. The statute is to be liberally construed and statutory exceptions to coverage are to be interpreted strictly. Any exclusion from coverage in an insurance policy must be clear and unmistakable. The insurer bears the burden of proving any insured named in the policy rejected in writing UM coverage equal to bodily injury limits or selected lower limits. Tugwell, supra.
In the instant case, VASA submits that the insured validly rejected UM coverage by submitting a copy of the policy application wherein the insured signed a separate section of the application entitled "UNINSURED/UNDERINSURED MOTORIST COVERAGE ACKNOWLEDGEMENT: (LOUISIANA)." The section consists of a self-authenticating statement regarding the applicant's knowledge and understanding of his choices regarding UM coverage, followed by two "ELECTION" statements and two "REJECTION" statements with an empty box preceding each statement. The election statements permit the applicant (by putting a check mark or "x" in the box) to elect UM bodily injury limits of $10,000 for each person and $20,000 for each accident, and to elect UM property damage limits of $10,000. Corresponding to, and immediately adjacent to the election statements on the policy, are the rejection statements. These statements respectively declare: "I elect to reject protection against Uninsured/Underinsured Motorists as provided in the applicable statutes and direct the insurer to issue my policy without this coverage" and "I elect to reject the Property Damage portion of this coverage." Both of the boxes rejecting UM bodily injury and property damage coverage are checked in the copy of the plaintiff's application. Directly under the election statements is a place for the applicant's signature, followed by a statement in bold print declaring that UM coverage will be added at the same limits as the bodily injury/property damage limits unless the statements are checked and the applicant signs this portion of the application.
The form of the rejection in the VASA insurance application appears to be in compliance with the statute and relevant jurisprudence. The separate rejection portion of the application provides the applicant with the option to elect UM coverage equal to bodily injury limits in the policy, or elect no UM coverage. Tugwell, supra.
Plaintiff argues that the application fails to offer UM coverage lower than bodily injury limits in the policy. This argument lacks merit, inasmuch as the printed application in question only provides bodily injury liability limits at the statutory minimum of $10,000 per person, $20,000 per accident, no more or less. The application could not offer UM coverage lower than the statutory minimum bodily injury liability coverage. See Garcia v. Certified Lloyds Insurance Company, supra.
Indeed, it is hard to imagine what more the insurance form could have contained to be in compliance with Louisiana law. Nevertheless, we must decide whether under the applicable jurisprudence, the affidavit submitted by the plaintiff wherein she contends that she was handed a completed application to sign rejecting uninsured motorist coverage without any prior discussion of her rejection of UM coverage creates a *1195 genuine issue of material fact precluding summary judgment.
In Henson v. Safeco Insurance Companies, 585 So.2d 534 (La.1991), the Louisiana Supreme Court held that where the insurance applicant merely signed a general application for insurance already completed and presented to him by his insurance agent, "without either marking the inconspicuous uninsured motorist coverage rejection box himself or signing or initialing the mark by the insurer's agent, the insurer's proof was insufficient to establish a valid rejection of UM coverage." Henson, supra at 539-40 (emphasis added). The court found that by presenting a completed application to the applicant rejecting uninsured motorist coverage, the insurer set up an automatic rejection of UM coverage requiring the plaintiff to affirmatively change the form in order to obtain UM coverage. The court stated that since Louisiana law requires insurers to include UM coverage unless specifically rejected by the insured, "[i]t is the rejection of UM coverage, and not the acceptance, that must be the affirmative act of the insured." Henson, supra at 539.
We note, however, that the rejection form in the insurance policy application in Henson is distinguishable from the application in the instant case. In Henson, rejection of UM coverage was provided by a single inconspicuous sentence preceded by an empty box to be marked in the general application. There was no separate signature line for the applicant, nor was there any information in the policy regarding the Louisiana law on UM coverage and the various options available to the applicant. By contrast, the VASA application provided a separate and distinct form for the rejection of UM coverage within the policy and information regarding the Louisiana law on UM coverage. On this form, the applicant is given the option to select UM coverage or reject UM coverage and is advised by the form that if the information is not filled in or not signed, UM coverage equal to the limits of liability coverage will automatically be provided.
Mrs. Watson does not contest the authenticity of her signature. The copy of the application submitted by defendant indicates that the original application has several hand drawn circles around various parts of the application, including circles drawn around the printed "X's" denoting the place where an applicant is to sign and also circles drawn around wherever there were empty boxes to be checked, such as the election boxes regarding the rejection of UM coverage. The plaintiff denies that she placed the check marks in the boxes rejecting UM coverage and was merely told to sign, and did so. She contends the check marks were present when she signed the document.
Although plaintiffs argue that the rejection was invalid because the rejection boxes were checked by the insurance agent, this fact alone does not invalidate the rejection. Henson says the applicant may either mark the boxes himself or sign or initial the insurer's mark. Patsy Watson admits that the signature directly under the marked boxes rejecting UM coverage is her own. She states that the application was complete when she signed it. We also note that in bold print directly above the final signature line on the application, the applicant is admonished not to sign the application without reading it in its entirety and not to sign if there are any blanks.
A person who signs a written document is presumed to have knowledge and understanding of that which he signs. Oncale v. Aetna Casualty and Surety Co., 417 So.2d 471 (La.App. 1st Cir.1982). We further note that Oncale was cited by the supreme court in Henson.
In Oncale, the First Circuit affirmed a summary judgment in favor of the insurer upholding the validity of an insurance applicant's rejection of UM coverage where the applicant signed the separate rejection form within the application, even though the applicant claimed in her affidavit that she did not know she was rejecting UM coverage when she signed the rejection form, and that at no time was any mention made of the rejection of such coverage. The court found that the rejection form completely and thoroughly detailed the options available for UM coverage under Louisiana law. The form contained a bold-print heading which read, "An Important Message About Your Uninsured Motorist *1196 Coverage." The language in the rejection form was in ordinary-sized print and in laymen's terms, self-explanatory, and was not confusing or misleading. The court held that absent any fraud or misconduct by the insurance agent (which was not alleged in the pleadings or affidavits), the plaintiffs were bound by the written rejection of UM coverage.
In addition to her signature on the UM rejection form and on the VASA application itself, there is a third and final signature of Patsy Thomas following the application proper. This "APPLICANT'S STATEMENTREAD BEFORE SIGNING" as it is called, has the following language in bold, all capital letters:
THE COVERAGES, INCLUDING THE OFFER OF ADDITIONAL COVERAGES AND UNINSURED MOTORISTS COVERAGE WERE EXPLAINED TO ME, AND I KNOWINGLY MADE THE SELECTIONS ABOVE. ANY PORTION OF THIS APPLICATION FILLED OUT BY AN AGENT OR BROKER IS EXPRESSLY ACKNOWLEDGED TO HAVE BEEN DONE AT MY REQUEST AND WITH MY AUTHORIZATION.
There are no allegations in the affidavit submitted by the plaintiff that she was incapable of reading the insurance application, nor are there any allegations that she, in fact, did not read the application or its pertinent parts before signing it. Mrs. Watson does not allege that she signed the above statement in error, or was induced to sign the above by fraud or duress. Absent one of these vices of consent, testimonial or other evidence may not be admitted to negate or vary the contents of an act under private signature. LSA-C.C. Art. 1848.
We find that the facts of this case are significantly distinguishable from the facts in Henson, the case upon which plaintiffs rely. Except for the claim that she did not supply the check marks rejecting uninsured motorists coverage and that there was no discussion of UM coverage, there is no similarity in the written record of the circumstances of the rejection. Unlike the application in Henson, the form of the rejection is prominently located in the application and requires a separate signature. It clearly gives the required options to the applicant. It is hard to imagine that one looking at the rejection form could not plainly see, read, and understand what was being signed. Moreover, unlike the application in Henson, the VASA application provides two boldly written admonishments to the applicant to read the document before signing. Mrs. Watson signed an acknowledgement that she knowingly made the selections rejecting UM coverage.
Under the clear and unambiguous provisions of the policy application, Mrs. Watson rejected UM coverage. There is no genuine issue of fact that she did in fact sign the rejection and the acknowledgement thereof. VASA was entitled to judgment as a matter of law, and the trial court properly granted summary judgment to the defendant under LSA-C.C.P. Art. 966.
AFFIRMED.