677 So.2d 686 (1996)
Roosevelt PINE, Plaintiff-Appellee,
v.
Jody DOOLITTLE, Farm Bureau Insurance Company and Louisiana Insurance Guaranty Association, Defendants-Appellants.
No. 28141-CA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1996.
Rehearing Denied August 15, 1996.
Hudson, Potts & Bernstein by Jan P. Christiansen, Monroe, for Appellant, Louisiana Insurance Guaranty Association.
Dennis Hennen, Monroe, for Appellee, Roosevelt Pine.
Before MARVIN, SEXTON, WILLIAMS and STEWART, JJ., and CLARK, J. Pro Tem.
*687 SEXTON, Judge.
Louisiana Insurance Guaranty Association (LIGA), "standing in the shoes" of the insolvent Automotive Casualty Insurance Company, appeals a judgment awarding uninsured motorist ("UM") coverage to Roosevelt Pine for his damages arising out of an August 1, 1990, rear end collision.
On appeal LIGA argues that when Pine purchased his auto insurance he signed a valid rejection of uninsured motorist coverage. Acknowledging that he signed the UM rejection, plaintiff contends he did not make an informed rejection and the rejection form was legally insufficient. We reverse the trial court and reject plaintiff's demands.
On June 1, 1990, Pine purchased auto insurance from Advanced Insurance Planning, Inc., a Monroe agency owned by Jimmy E. Gulett. Beth Smalling, the personal lines manager for auto insurance, assisted Pine with his transaction. Pine signed the attached single page application to provide insurance for himself and his daughter for two vehicles for coverage in the amounts of 10/20/10. Pine's signature appears in two places marked with "X's." The first states that he has read the application and attests that he has provided truthful information to the insurer. At the bottom of the page, the following appears:
UNINSURED MOTORISTS PROTECTION-COVERAGE SELECTION Louisiana law requires that all automobile liability policies issued or delivered in this state shall afford Uninsured Motorist Coverage unless the insured shall reject such coverage.
I hereby REJECT Uninsured Motorists Bodily Injury coverage.
Signature of Applicant: X s/Roosevelt Pine
The parties stipulated that Pine was injured on August 1, 1990, in an auto accident that was the fault of an underinsured motorist. Pine was not at fault and the primary insurer paid its policy limits. Plaintiff's damages would entitle him to $10,000.00 uninsured motorist coverage under his own policy and $2,000.00 in medpay policy limits. The parties also stipulated to policy limits of 10/20/10 and agreed to the introduction into evidence of the insurance policy. Depositions of the plaintiff, Gulett and Smalling were placed into evidence in lieu of live testimony.
LSA-R.S. 22:1406(D) requires insurers to provide uninsured motorist coverage in not less than limits of bodily injury liability provided by the policy. Such UM coverage is not required if the insured rejects the coverage in writing or selects lower limits. The Louisiana Supreme Court has held that a valid rejection or selection of lower limits must be in writing and signed by the named insured or his legal representative. The insurer must place the insured in a position to make an informed rejection of UM coverage. The form used by the insurance company must give the applicant the opportunity to make a meaningful selection from his options provided by statute: (1) UM coverage equal to bodily injury limits in the policy; (2) UM coverage lower than bodily injury limits in the policy; or (3) no UM coverage. Tugwell v. State Farm Insurance Co., 609 So.2d 195 (La.1992).
According to plaintiff, he was assisted by a young woman who he informed he wanted full coverage, which he thought included UM. She did not give him the application to read but asked him to sign on the two places marked with X. Pine stated there was no discussion of UM coverage, and he was unaware he was rejecting it by signing the form. Pine reported that he had UM coverage on insurance policies previous and subsequent to the policy at issue.
The owner of the agency did not see Pine sign this application and stated that "full coverage" was an ambiguous term which meant different things to different people. He used the term to refer to liability, comprehensive and collision coverage.
Beth Smalling, the agent, did not recall Pine's insurance transaction, but described her normal procedure for taking new applications for auto insurance. Smalling also stated that "full coverage" was used to mean different things, and that she asked customers to clarify what they meant when full coverage was requested. Her normal practice *688 was to go over requested coverage, print out an application and review coverages a second time before asking an applicant to sign.
In its reasons for judgment, the trial court concluded that Pine made a knowing rejection of UM coverage because he signed his name by the agent's X on the separate and self-contained UM rejection. The trial court rejected plaintiff's claim that he was unaware he was rejecting UM coverage. Pine's acknowledgment that he had previously purchased auto insurance with UM coverage along with the clear visibility of the UM rejection in a separate location supported the trial court's conclusion. A person who signs a written document is presumed to know and understand what he signs. Thomas v. Goodson, 26,356 (La.App. 2d Cir. 12/7/94), 647 So.2d 1192. The trial court was not manifestly in error in finding that Pine made a knowing rejection of UM coverage.
The trial court found Pine's rejection of UM coverage invalid, nevertheless, because this UM rejection form, which was signed in 1990, did not provide a meaningful opportunity to select UM coverage in an amount lower than the 10/20 minimum amount of liability coverage. LSA-R.S. 22:1406 was amended in 1992 to specifically prohibit selection of UM coverage lower than the 10/20 limits established by 32:900. Because Pine's policy was bought in 1990 when the statute did not expressly prohibit UM coverage lower than 10/20, the trial court found that his rejection was invalid, since he wasn't given a chance to select lower UM coverage. In West v. Louisiana Indemnity Co., 26,845 (La.App. 2d Cir. 4/5/95), 653 So.2d 194, 195, writ denied, 95-1099 (La. 6/16/95), 655 So.2d 337, this court specifically rejected that reasoning:
In rendering summary judgment in favor of the defendants, the court followed the current statutory law under LSA-R.S. 22:406(D)(1)(a)(I), as amended by 1992 Act No. 980, and which provides in pertinent part: "In no event shall the policy limits of an uninsured motorist policy be less than the minimum limits required under R.S. 32:900." However, in the instant case, the policy was issued and the accident occurred before the above amendment. The pre-amendment statute did not contain the above sentence, but simply read, in pertinent part, as follows:
No automobile liability insurance ... shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles ...; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. LSA-R.S. 22:1406D(1)(a) (emphasis supplied).
Put in simple language, the statute provided that unless the applicant rejects UM coverage or selects lower limits, he is automatically afforded UM coverage equal to the amount of liability limits of the policy.
With respect to coverage claims arising prior to the amendment, this court, and at least one other court, have held that if the applicant selects the lowest statutory limit of liability coverage and rejects UM coverage equal to the liability limits of the policy, the rejection of the UM coverage is not deficient for failing to offer UM coverage lower than the lowest statutory limits of liability coverage.
This reasoning is based on the view that an insurance company could not offer UM coverage below the statutory minimum liability limits. Garcia v. Lloyd's Insurance Company, supra [598 So.2d 1278 (La.App. 4th Cir.1992)]. We followed this line of reasoning in Thomas v. Goodson, 26,356 (La.App. 2d Cir. 12/07/94) 647 So.2d 1192. Plaintiff relies on Tugwell v. State Farm Insurance Co., supra, which states that compliance with the statute requires that the applicant have three options: UM coverage equal to bodily injury limits in the policy, UM coverage lower than those limits, or no UM coverage. The insured in that case had purchased a personal umbrella policy with liability limits of $1,000,000.00 *689 and signed a statement rejecting UM coverage. The policy did not offer lower limits of UM coverage. The court held that this was not a valid rejection of UM coverage because the insured was not given the option to select lower UM limits.
We are still of the view expressed in Thomas v. Goodson, supra, that the requirement of the LSA-R.S. 22:1406D(1)(a) and Tugwell, supra, to offer the applicant the option to select lower UM limits applies to those instances where the liability limits selected by the applicant are greater than the statutory minimum.
Thus, the trial court erred in invalidating the rejection based upon plaintiff's not being offered UM coverage in limits below 10/20. (The trial court opinion here predated West.) However, this court reviews judgments, not reasons for judgment. Baumeister v. Plunkett, 27,185 (La.App. 2d Cir. 8/23/95), 661 So.2d 510.
In his brief, Pine argues that the trial court's result is correct. In plaintiff's view, the UM rejection form was defective because it did not give Pine the option to accept UM coverage and was ambiguously worded. In Henson v. Safeco Insurance Co., 585 So.2d 534 (La.1991), the UM rejection was held invalid. The court stated that any rejection of UM coverage must be expressed clearly, unambiguously and unmistakably. A waiver of UM coverage must be in writing and signed by the named insured. The policy must include UM protection unless it is specifically rejected.
It is the rejection of UM coverage and not the acceptance, that must be the affirmative act of the assured. Here, the insurer, by presenting a completed application form to Henson, attempted to set up an automatic rejection of UM coverage and thus require Henson to affirmatively change the form in order to obtain UM coverage.
Henson, supra at 539 (emphasis ours).
Henson's only affirmative act was signing the application which contained no separate UM rejection form for applicant to sign. Henson did not make an informed rejection because there was no separate signature line for Henson to sign or initial indicating a specific intent to reject UM coverage. Henson did not place an X in the rejection box or initial the X already placed there. This court approved the rejection form signed in Thomas v. Goodson, supra, where the insured was allegedly given the completed UM form to sign without prior discussion of UM coverage. The Thomas form provided a separate, distinct form for UM rejection and gave information of Louisiana Law regarding UM coverage. The insured was given the option of selecting UM coverage or rejecting it and was advised that, if the information was not filled in or signed, UM coverage would be provided.
Similarly, a valid rejection of UM coverage was found in Nelson v. Ragan, 26,724 (La. App. 2d Cir. 4/5/95), 653 So.2d 185, writ denied, 95-1161 (La. 6/16/95), 655 So.2d 332. In so holding, we concluded that the factors that led to invalidating the Henson rejection were the prior completion of the rejection box by the agent, the inconspicuous location of the rejection in the policy, the lack of information leading to an informed decision by the insured and the lack of an affirmative act by Henson:
We read the Henson decision to require that the application present the applicant with a separate or conspicuous rejection form that informs the applicant of his options regarding UM coverage and requires the applicant to do some affirmative act rejecting coverage, such as checking the rejection box himself or initialing or signing the rejection.
The rejection form, or more properly speaking, the "elect to reject" form signed by Nelson ... complied with the mandates of Henson and Tugwell, supra, which require that the applicant be given an opportunity to make a meaningful selection from the statutory options: (1) UM coverage equal to bodily injury limits in the policy; (2) UM coverage lower than bodily injury limits in the policy; or (3) no UM coverage.
As in the Thomas application, this Aetna policy application had a separate form for UM options. The form provided information on Louisiana's mandatory UM coverage *690 absent a rejection. The form also provided the insured the option of selecting UM coverage equal to liability limits of the policy or less than liability limits along with the opportunity to reject UM coverage. Further, the form contained an admonition to read carefully and indicate the selection of coverage.
Somewhat distinguishable from the form in Thomas, supra, this form does not state that UM coverage will be provided unless the form was filled in and signed. Nevertheless, the form does state that the insurer will, as required by law, supply UM coverage equal to bodily injury liability coverage limits in the policy unless the applicant selects a lower limit or rejects UM coverage. This tracks the statutory language of LSA-R.S. 22:1406(D).
Pine relied upon Holbrook v. Holliday, 93-1639 (La.App. 3d Cir. 6/1/94), 640 So.2d 804, writ denied, 94-1735 (La. 10/7/94), 644 So.2d 642, in which the attached rejection of UM was found inadequate. In that case, the court stated:
We find that the State Farm form did not give Mrs. Holbrook the opportunity to make a meaningful selection from the options available to her as provided to her by statute. The rejection form only detailed two of the options available to the Holbrooks. Although the language of the form is in ordinary-sized print and in terms easily understood by the layman, it states that the insured has "the right to be provided with" UM coverage in amounts equal to bodily injury liability limits. The language "to be provided" implies that the customer is not automatically provided with UM coverage regardless of whether he or she would be required to pay higher premiums, but that the customer has to do something to receive what he or she is entitled to by law. Furthermore, the form is entitled, "Louisiana Uninsured Motor Vehicle Coverage" when it is really a form used, not to obtain UM coverage, but only to select lower limits or reject UM coverage.
Holbrook, supra at 808. Citing Holbrook, supra, the court in Anderson v. Allstate Insurance Co., 93-1102 (La.App. 1st Cir. 4/8/94), 642 So.2d 208, writ denied, 94-2400 (La. 11/29/94), 646 So.2d 404, also disapproved a similarly worded UM rejection. Pine argues that the rejection form here, which states that the policy "shall afford" UM coverage, is just as ambiguous as the "right to be provided" UM coverage language found objectionable in Holbrook and Anderson, supra, because "afford" and "provide" are synonymous terms.
LIGA, on the other hand, argues that while the language in Holbrook and Anderson might indicate that the insured had to do something affirmative to obtain UM coverage, the language in the rejection form at issue here is not ambiguous. We agree. We believe the expression "shall afford Uninsured Motorist Coverage" found in the instant policy clearly does not imply that the customer will have to take some action to obtain uninsured motorist coverage as the expression "the right to be provided with Uninsured Motor Vehicle Coverage" found in the policies at issue in Holbrook and Anderson can be said to do. We agree with the trial court's conclusion that the form did not imply that Pine had to do something to obtain UM coverage and, therefore, it was not defective in that respect. Furthermore, to the extent this conclusion offends Holbrook and Anderson, we decline to follow them.
We also agree with the trial court's conclusion that the lack of a place on the form where Pine could accept UM coverage was not fatally defective because the form did not lack clarity. As the supreme court stated in Henson, "[i]t is the rejection of UM coverage and not the acceptance, that must be the affirmative act of the assured." Henson, supra at 539. (Emphasis ours). The rejection at issue in this case clearly states that UM coverage shall be afforded the applicant unless the applicant rejects such coverage. Mr. Pine rejected UM coverage.
Accordingly, for the reasons expressed hereinabove, the trial court erred in finding that the rejection form executed by Mr. Pine did not constitute a valid waiver of UM coverage. We reverse the judgment of the trial court and render judgment on behalf of the *691 defendant. Costs of this appeal are assessed against the plaintiff.
REVERSED AND RENDERED.
MARVIN, C.J., concurs with written reasons.
WILLIAMS, J., dissents and assigns written reasons.
STEWART, J., dissents for reasons assigned by WILLIAMS, J.
MARVIN, Chief Judge, concurring.
I have much difficulty squaring or reconciling the several published opinions deciding whether a particular UM options or selection form or provision in the application, which an insured signs to purchase automobile liability insurance of minimum limits, complies with La.R.S. 22:1406 and constitutes a valid rejection of UM coverage.
Compare Banks v. Patterson Ins. Co., 94-1176 (La.App. 1st Cir. 9/14/95), 664 So.2d 127, writ denied, with Guilbeau v. Gabriel, 553 So.2d 1078 (La.App. 3d Cir.1989), writ denied. In each case the appeal was of a summary judgment. The form in each case contained no UM option other than the rejection of UM coverage. Banks found the form "defective," while Guilbeau found the form "valid." See also Washington v. Imperial Fire & Casualty Ins. Co., 28,434 (La.App. 2d Cir. 6/26/96), 677 So.2d 599.
The UM option form or provision in the application for minimum liability coverage in this appeal reads:

UNINSURED MOTORISTS PROTECTIONCOVERAGE SELECTION
Louisiana law requires that all automobile policies issued or delivered in this state shall afford Uninsured Motorist Coverage unless the insured shall reject such coverage.
I hereby REJECT Uninsured Motorists Bodily Injury coverage.
Similar language ["unless the insured shall specifically reject such coverage"] has been upheld as a valid rejection. See Thomas v. Goodson, 26,356 (La.App. 2d Cir. 12/7/94), 647 So.2d 1192, also a summary judgment case. Writs have been denied, however, in a unpublished opinion by a three-judge panel of this court holding, in a summary judgment case, that such a form was an invalid rejection, citing Banks. See Dantzler v. Patterson Insurance Co., 96-0765 (La. 5/17/96), 673 So.2d 609. Two members of the five-judge panel of this court considering a rehearing application in that case dissented from the refusal to grant a rehearing.
The judgment appealed in the instant case was not a summary judgment, but a judgment after a trial on the merits. The trial court upheld the rejection of UM coverage. Where the validity of UM rejection is determined and made a factual finding by the trial court in a trial, an appellate court should not disturb that finding, "absent a determination that the trial court was manifestly erroneous." Carter v. Baham, 94-2809 (La. 1/27/95), 649 So.2d 967, 968. Under the factual circumstances summarized in J. Sexton's opinion, I am unable to say that the trial court was manifestly erroneous in its conclusion.
For the above reasons, I concur in the affirmance of the trial court's judgment upholding the validity of the UM rejection.
WILLIAMS, Judge, dissenting.
I respectfully dissent from the majority's analysis and the conclusion reached. The trial court was correct in finding that the rejection form executed by the plaintiff was invalid as a waiver of UM coverage. Regarding UM coverage, the Louisiana Supreme court has held that an insured must be given the opportunity to make a meaningful selection from the three options provided by LSA-R.S. 22:1406(D): (1) UM coverage equal to bodily injury limits in the policy; (2) UM coverage lower than bodily injury limits the policy; (3) no UM coverage. Tugwell v. State Farm Insurance Company, 609 So.2d 195 (La.1992). Furthermore, LSA-R.S. 22:1406 is to be liberally construed to carry out the objective of providing recovery for those injured through no fault of their own. Mosley v. Dairyland Insurance Company, 614 So.2d 792 (La.App.2d Cir.1993) citing Roger v. Estate of Moulton, 513 So.2d 1126 *692 (La.1987) and Hoefly v. Government Employees Insurance Company, 418 So.2d 575 (La.1982). When the policy, as was the policy in the instant case, is written for an amount of coverage equal to the statutory minimum, insurers are only required to offer the first and third options mentioned in Tugwell. West v. Louisiana Indemnity Company, 26,845 (La.App.2d Cir. 4/5/95), 653 So.2d 194.
The majority relies on this court's prior opinions finding valid rejections of UM coverage and approving certain rejection forms. See Thomas v. Goodson, 26,356 (La.App.2d Cir. 12/07/94), 647 So.2d 1192 and Nelson v. Ragan, 26,724 (La.App.2d Cir. 4/5/95), 653 So.2d 185, writ denied, 95-1161 (La. 6/16/95), 655 So.2d 332. However, the rejection forms in these cases specifically stated that the law requires the insurer to offer UM coverage in an amount equal to the bodily injury limits in the policy. The form in the instant case does not so state, but merely states that the insurer must provide UM coverage. The form does not fully apprise the insured of what he was rejecting when signing the rejection form. If the insured does not fully know what is being rejected, then he cannot be said to have meaningfully selected the option of no UM coverage.
The form in this case does not track the statute. Further, the form does not give the insured the opportunity to make a "meaningful selection" from the statutory options. Because the form does not fully comply with the Tugwell options, the result reached by the trial court is correct.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, WILLIAMS, STEWART and CLARK, JJ.
Rehearing denied.