785 So.2d 118 (2001)
Guo JIE, individually and as Administratrix of the Estate of the Minor, Yang Lin, Plaintiff-Appellee
v.
CERTIFIED LLOYDS PLAN and Russell E. May, Defendant-Appellant.
No. 34,545-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2001.
Rehearing Denied May 3, 2001.
*119 Piper and Associates, by Brenda F. Ford-Jones, Counsel for Appellant.
Peters, Ward, Bright & Hennessy, by J. Patrick Hennessy, Alan Stegall, Counsel for Appellee.
M.F. "Rick" Fayard, Jr., Counsel for Russell E. May.
Before NORRIS, GASKINS and KOSTELKA, JJ.
KOSTELKA, J.
Louisiana Insurance Guaranty Association ("LIGA") files this appeal of the trial court's denial of its motion for summary judgment and the granting of summary judgment in favor of Guo Jie, individually and as the Administratrix of her minor child, Yang Lin (collectively referred to herein as "Guo Jie"). The basis for the final judgment which cast LIGA in damages was an earlier determination by the trial court on summary judgment, which invalidated the uninsured motorist insurance ("UM") rejection form signed by the named insured, Xiao-Min Yang ("Yang"), Guo Jie's deceased husband, thus granting UM coverage. On appeal, LIGA argues that this finding was in error. We agree, and for the following reasons determine that the invalidation of the UM rejection form was improper as a matter of law. As a result of this holding, the final judgment is reversed in part, as it pertains to the damages assessed against LIGA.

FACTS
On or about July 5, 1990, Yang was hit by a vehicle owned and operated by Russell May ("May"), as a result of which Yang died. Guo Jie filed suit against May and against Yang's UM carrier, Certified Lloyds Insurance Company ("Certified Lloyds"). LIGA was added as a defendant upon Certified Lloyds' insolvency.
In December, 1994, Guo Jie filed a Motion for Summary Judgment on the issue of UM coverage, alleging that the rejection form executed by Yang was invalid and there was no genuine issue of material fact. In July of 1996, LIGA filed its motion for summary judgment, alleging that Yang had properly rejected UM coverage. *120 Arguments were heard on the two motions, and on October 21, 1996, the trial court rendered judgment denying LIGA's motion for summary judgment and granting Guo Jie's Motion for Summary Judgment thus ordering UM coverage at the minimum limits. In March, 2000 (shortly prior to the trial of this matter on the issue of liability), LIGA filed its motion to reconsider the summary judgment, which was denied by the trial court. Trial of this matter proceeded on the issue of liability. Pursuant to the trial court's final judgment rendered on July 11, 2000, LIGA was cast in judgment in the amount of $10,000. It is from this final judgment that LIGA appeals.[1]

LAW AND ANALYSIS

Procedural Issues Raised by Guo Jie
Guo Jie raises two threshold issues in response to LIGA's appeal, both of a procedural nature.
First, Guo Jie argues that this appeal is untimely and should be dismissed. Guo Jie argues that the summary judgment was rendered on October 21, 1996 and, pursuant to the statutory law at the time, it should be considered a final judgment which should have been appealed pursuant to the time delays set out in La. C.C.P. art. 2087. Specifically, she points to La. C.C.P. art.1915, which in 1996 stated, in pertinent part, as follows:
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
. . .
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, except a summary judgment rendered pursuant to Article 966(D).[2] (Emphasis added)
As a result of an amendment to La. C.C.P. art. 966 effective May 1, 1996, subsection D, which provided for summary judgments rendered on the issue of insurance coverage alone, was changed to subsection F. However, La. C.C.P. art. 1915 was not amended. Therefore, Guo Jie argues that a literal reading of the two articles together as they existed in October of 1996 would have the effect of making a judgment on insurance coverage alone a final appealable judgment. We disagree.
Although a literal reading of the articles in October 1996, after the revision of La. C.C.P. art. 966, could lead to the understanding that the summary judgment was a final judgment, this clearly was not the legislative intent behind the revision. First, we note that subsection D of Article 966, after its May 1, 1996 amendment, stated as follows:

*121 D. The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial.
This amended subsection D of Article 966, when considered with La. C.C.P. art. 1915(A)(3), clearly had no meaning in the context of the latter article. Second, we note that the 1997 editorial notes to La. C.C.P. art.1915 (obviously written after the May 1996 revision to Article 966), although not legally binding, refer the reader to "See C.C.P. art. 966(C) and (D), summary judgment on issues of liability or insurance coverage alone." Clearly, the intent of the legislature then was not to change the gist of La. C.C.P. art. 1915(A)(3), which at that time did not allow the appeal of a summary judgment on the question of insurance coverage alone.[3] We conclude that this was clearly a legislative oversight in the drafting of the amendments and nothing more.
Moreover, we note that appeals are favored in the law and should be maintained unless a legal ground for dismissal is clearly shown. Tucker v. Northeast Louisiana Tree Service, 27,768 (La.App.2d Cir.12/06/95), 665 So.2d 672, writ denied, 96-0063 (La.03/08/96), 669 So.2d 404, and writ not considered, 96-0100 (La.03/08/96), 669 So.2d 404; Reed v. Columbia/HCA Information Service, Inc., 99-1315 (La. App. 5th Cir.04/25/00), 761 So.2d 625; Mack v. Evans, 33,823 (La.App.2d Cir.04/07/00), 756 So.2d 1270, writ denied, 00-1593 (La.08/31/00), 766 So.2d 1281. An appeal is not to be dismissed for a mere technicality. Tucker, supra; Reed, supra. Unless the ground urged for dismissal is free from doubt, the appeal should not be dismissed. Id. Therefore, we conclude that LIGA's appeal was timely taken.
The second procedural issue raised by Guo Jie is whether the alleged fact that Yang was covered by UM insurance was deemed admitted by LIGA as a result of its untimely filed answers to requests for admissions on that specific issue. Guo Jie argues that pursuant to La. C.C.P. arts. 1467 and 1468, the failure by LIGA to respond timely to its request for admissions results in those requests being deemed admitted. Although this argument was raised by Guo Jie in her Motion for Summary Judgment, there is no indication that the trial court considered the argument. However, we find that this argument is not an adequate basis for upholding the summary judgment in Guo Jie's favor for the following reasons.
Pursuant to La. C.C.P. art. 1467, a party may serve upon any other party a written request for the admission of the truth of any relevant matters of fact. That same article provides that, generally, the matter is deemed admitted if the receiving party fails to respond within fifteen days after service of the request. Any matter deemed admitted under Article 1467 is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission. La. C.C.P. art. 1468. The court may permit withdrawal of an admission when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal of the admission will prejudice him in maintaining his action or defense on the merits. La. C.C.P. art. 1468.
*122 Admissions may be used to establish a controversial issue constituting the crux of the matter in litigation. See, Succession of Rock v. Allstate Life Ins. Co., 340 So.2d 1325 (La.1976); Vardaman v. Baker Center, Inc., 96-2611 (La.App. 1st Cir.03/13/98), 711 So.2d 727. In Succession of Rock, supra, the Louisiana Supreme Court observed that as reflected in the record before it, the respondent to the request for admissions had not utilized any of the means provided to prevent admission of key facts made the subject of the request. The court further noted that the record presented no controversy between the parties as to the issues addressed in the subject request for admissions. Therefore, the admissions in Succession of Rock, supra were deemed to be facts of record which the court was forced to recognize. Id. at 1331.
However, unlike the record before the Louisiana Supreme Court in Succession of Rock, supra, we note that the record presently before us clearly shows the issue of UM coverage was in controversy from the time LIGA was added as a defendant by Guo Jie in August, 1994. In its timely filed Answer to Amended Petition, LIGA denied unequivocally the allegation contained in the original Petition that a policy of insurance existed which provided Yang UM coverage. In January, 1995, following Guo Jie's Motion for Summary Judgment filed on December 8, 1994, LIGA filed a response to Guo Jie's request for admissions, denying that UM coverage existed on behalf of Yang. Clearly, the record shows that the issue of UM coverage was disputed by LIGA as is evidenced by its answer filed in September, 1994 and later by its, albeit untimely, response to Guo Jie's request for admissions.
This court has previously recognized "[T]hat failure to timely answer a request [for admissions] should not automatically result in admission of the facts." (Emphasis original). Security Nat. Trust v. Kalmback, 613 So.2d 664 (La.App. 2d Cir.1993). Moreover, this court has allowed late-filed denials to requests for admissions to serve as requests for withdrawal of those admissions, even where the responses were provided extremely late and were not presented to the court by a motion to withdraw or to amend the admissions. See, Id. at 669; Smitherman, Lunn, Chastain & Hill v. Killingsworth, 561 So.2d 816, 818 (La.App. 2d Cir.1990); Hoskins v. Caplis, 431 So.2d 846 (La.App. 2d Cir.1983).
Based on the circumstances of this case, as reflected by the record before us and the previous jurisprudence of this court, we determine that LIGA's untimely filing of its denial to Guo Jie's request for admissions on the issue of UM coverage on behalf of Yang constituted a withdrawal of any admissions that may have been deemed from its apparent failure to timely answer, and this argument advanced by Guo Jie has no merit.

Rejection of UM Coverage
Substantively, LIGA raises one assignment of error, arguing that the form executed by Yang was at that time a valid rejection of UM coverage, and that the denial of its Motion for Summary Judgment was incorrect as a matter of law.[4]
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Kennedy v. Holder, 33,346 *123 (La.App.2d Cir.05/10/00), 760 So.2d 587; Yarbrough v. Federal Land Bank of Jackson, 31,815 (La.App.2d Cir.03/31/99), 731 So.2d 482; Bockman v. Caraway, 29,436 (La.App.2d Cir.4/2/97), 691 So.2d 815.
In this case, LIGA argues that the trial court erred as a matter of law in its holding that the UM rejection form was invalid. The disputed rejection form appeared at the bottom of Yang's application for insurance and provided:
UNINSURED MOTORISTS PROTECTIONCOVERAGE SELECTION
Louisiana law requires that all automobile liability policies issued or delivered in this state shall afford Uninsured Motorist Coverage unless the insured shall reject such coverage.
I hereby REJECT Uninsured Motorists Bodily Injury coverage.
Signature of Applicant: s/ XIAO-MIN YANG
There was an additional form to the application which read as follows:
CERTIFIED LLOYD'S REJECTION OF UNINSURED MOTORIST COVERAGE
The applicant elects to REJECT protection against Uninsured Motorists as provided in Section 1406 of Title 22 of the Louisiana Revised Statutes of 1950, Subsection D, which permits the insured named in the policy to reject insurance against loss caused by Uninsured Motorists[. T]he undersigned (and each of them) do(es) hereby reject such insurance coverage, and it is hereby understood and agreed that such coverage will not be afforded any person by this policy; that this rejection of Uninsured Motorists Coverage applies with respect to all vehicles now insured under the policy as well as any vehicle which may be covered by the policy in the future regardless of whether it is owned by the insured on the date of execution of this rejection instrument.
This section was also signed by Yang. LIGA contends that Yang was given two options: (1) not signing and thus choosing UM coverage, and (2) signing in both spaces and rejecting UM coverage. LIGA argues that the rejection form afforded Yang a meaningful selection and his rejection was valid. Thus, LIGA maintains that the trial court erred in granting summary judgment in favor of Guo Jie and denying its, which was incorrect as a matter of law. We agree.
For support of that position, LIGA primarily relies on this court's prior decision in Pine v. Doolittle, 28,141 (La.App.2d Cir.06/26/96), 677 So.2d 686, writ denied, 96-2269 (La.05/30/97), 694 So.2d 240. In Pine, supra, the application for insurance contained language regarding the option to reject UM identical to that of the language in this case, which this court ultimately concluded was valid because the applicant had the obligatory two options: he either (1) could not sign and therefore receive UM coverage equal to his policy limits, or (2) could sign and reject the UM coverage. Id. at 690.
In Pine, supra, after a trial of the matter, the trial court invalidated the UM rejection form based on that plaintiff's not being offered UM coverage in limits below 10,000/20,000, the minimum limits allowed for liability coverage. The Pine court reversed the trial court and in so doing recognized Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992) for the proposition that compliance with La. R.S. 22:1406D(1)(a) required that the applicant have three options: (1) UM coverage equal to bodily injury limits in the policy; (2) UM coverage lower than those limits; or, *124 (3) no UM coverage. In its analysis of the validity of the Pine rejection form, this court also recognized a prior decision in Thomas v. Goodson, 26,356 (La.App.2d Cir.12/07/94), 647 So.2d 1192, which stood for the proposition that the requirement of La. R.S. 22:1406D(1)(a) and Tugwell, supra to offer the applicant the option to select lower UM limits applies to those instances where the liability limits selected by the applicant are greater than the statutory minimum. Thus, it was held, because the Pine insured had elected minimum liability coverage, the rejection form need not offer the option for lower UM coverage; the form need only inform an applicant of the following choices: (1) electing UM coverage (which by definition would have to be in the same amount as the applicant's liability coverage); or (2) electing to reject UM coverage. Moreover, the court noted that pursuant to Henson v. Safeco Ins. Companies, 585 So.2d 534 (La. 1991), only the rejection of UM coverage and not the acceptance must be the affirmative act of the applicant. With that analysis made, the Pine court determined that the rejection form constituted a valid waiver of UM coverage.
Following this court's decision in Pine, supra, Daigle v. Authement, 96-1662 (La.04/08/97), 691 So.2d 1213 determined the validity of an almost identical rejection form.[5] The Daigle court stated:
Daigle had only two options open to her under La. R.S. 22:1406, the statutorily mandated UM coverage or none at all. Louisiana Indemnity had to inform her of those two options and give her the opportunity to select between them. In our view, the form designed by Louisiana Indemnity did so in a manner sufficient to permit a valid rejection of UM coverage.
The Louisiana Indemnity form advised Daigle in plain and unambiguous language that Louisiana law requires all automobile liability policies issued or delivered in the state to afford uninsured motorist coverage "unless the insured shall reject such coverage." Thus, Daigle was advised that if she did nothing, she would have UM coverage. The form then provided a mechanism for the insured to exercise her other statutory option, rejection of coverage. By executing the form, she made a choice between having UM coverage and not having it. None of the options available were foreclosed by the Louisiana Indemnity form. (Emphasis added)
Id. at 1215.
Further, in Daigle, supra, there were no allegations that the insured did not understand the form when it was signed or that she was misled in any way. The Daigle plaintiff simply argued that the form was facially defective, because it was ambiguous. The Daigle court rejected this argument, stating that if the applicant failed to sign the form, she selected the option of accepting UM coverage, and if she signed the form, she rejected that option. Id. at 1215-16. Additionally, the Daigle court stated that no set format, such as boxes or blanks, is required for UM insurance forms for an applicant to indicate a selection from the required options. Id. at 1216. In fact, the court noted that "[i]t [was] not the job of the courts to draft insurance forms or to dictate the exact format or wording which must be used for a valid rejection of the mandated UM coverage." Id.
*125 The exact same scenario exists in this case. Yang elected to purchase the minimum bodily injury limits allowable; therefore, the option of selecting UM coverage at limits lower than those in the policy was foreclosed by law. Because Yang purchased bodily injury coverage in the minimum available limits, he could not lawfully opt to have UM coverage at lower limits. He only had two options, and the Certified Lloyds form gave him those required two options: (1) not signing and thus choosing UM coverage, and (2) signing and rejecting UM coverage. Although we recognize the slight difference in language in the sentence prior to the signature line on the Daigle form, it was the language in the paragraph identical to that of the Yang application upon which the Daigle court based its decision.
Guo Jie also cites another opinion of this court of the same date as Pine, supra, Washington v. Imperial Fire and Cas. Ins. Co., 28,434 (La.App.2d Cir.06/26/96), 677 So.2d 599, wherein we held a UM rejection form defective for failing to provide the insured the requisite two options already described herein. Factually, Washington, supra is inapplicable to the case at hand. First, we note that as described in that opinion, the form used in Washington, supra differed significantly from the forms used in Pine, supra and Daigle, supra. Second (and significantly), the Washington court stated that: "The form does not suggest that [the insured] would have the protection of UM coverage at the minimum liability coverage amounts if she did not reject the UM coverage...." Id. at 601. This finding by the Washington court regarding that UM rejection form clearly differs from the facts at hand. In this case, the form at issue not only suggested, but clearly stated, that Yang would have UM coverage unless he chose to reject it.
Therefore, we conclude that the execution of the Certified Lloyds form by Yang constituted a valid and enforceable rejection of UM coverage under Louisiana law as expressed by this court previously in Pine, supra and then by the Louisiana Supreme Court in Daigle, supra. Here, the UM rejection form clearly advised Yang of his two options required by the law then applicable. He could do nothing and would have UM coverage, or he could sign and reject UM coverage. Unfortunately for Guo Jie, in this case Yang obviously made an informed choice to reject UM coverage. Accordingly, the summary judgment which invalidated the rejection form was incorrect as a matter of law.

CONCLUSION
For these reasons, we conclude that the order of the trial court granting Guo Jie's Motion for Summary Judgment and denying LIGA's Motion for Summary Judgment was improper as a matter of law. Consequently, that portion of the trial court's July 11, 2000 final judgment against LIGA in the amount of $10,000 is reversed, with costs of this appeal to be assessed to Guo Jie.
REVERSED IN PART.

APPLICATION FOR REHEARING
Before NORRIS, C.J., WILLIAMS, GASKINS, CARAWAY, and KOSTELKA, JJ.
Rehearing denied.
NOTES
[1] We note that LIGA raises as error the trial court's holding denying its Motion for Summary Judgment on the issue of UM coverage; however, we further notice that pursuant to the final judgment of the trial court dated July 11, 2000, LIGA was cast in judgment for the amount of $10,000 as a result of the determination that UM coverage existed. Although at first blush, it would appear LIGA is appealing the 1996 summary judgment of the trial court, clearly, the judgment being appealed is the final judgment of July 11, 2000. See, La. C.C.P. art. 2083(A). Therefore, the matter before this court is an appeal of the final judgment of the trial court, although the issues to be addressed concern an interlocutory judgment of the trial court during the course of the proceedings.
[2] Prior to May 1, 1996, La. C.C.P. art. 966(D) stated as follows: "A summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to liability or the amount of damages."
[3] See, Cantrell v. Maskos, 96-1903 (La.App. 1st Cir.9/23/97), 700 So.2d 240, 241, wherein the First Circuit, noticing the apparent discrepancies caused by the amendment of Article 966, determined that summary judgment based on the issue of insurance coverage was an interlocutory judgment not subject to appeal without a showing of irreparable harm.
[4] As amended in 1997, La. R.S. 22:1406D(1)(a)(ii) now provides that rejection of UM insurance shall be made only on a form prescribed by the commissioner of insurance.
[5] That form differed only in that the language immediately above the signature line stated: "I HAVE BEEN OFFERED and I hereby REJECT Uninsured Motorist Bodily Injury Coverage."