BROWN, Chief Judge.
liWe granted the application of defendant, State Farm Fire and Casualty Company (“State Farm”)[1], who sought supervisory review of the denial of its motion for summary judgment. This is an uninsured motorist insurance coverage question that arises from a very unusual set of facts. We now affirm the trial court’s denial of State Farm’s motion for summary judgment.

Facts

On September 9, 2010, Willie Harlow was driving his BMW eastbound on Holly Springs Church Road in Coushatta, Louisiana, when he was hit head-on by a Mitsubishi automobile driven by Thomas Dixon, a relative of Harlow’s. Apparently, the Mitsubishi that Dixon was driving was owned by Harlow. The BMW was covered by an auto policy issued by State Farm. In addition to liability insurance, Harlow had uninsured motorist (“UM”) coverage on the BMW with limits of $15,000/$30,000. Dixon, the driver of the Mitsubishi, was at fault. The insurance company on the Mitsubishi (which was not State Farm) paid its policy limits to Harlow. When State Farm refused to pay Harlow under the UM provision of the policy that covered his BMW, Harlow filed suit against State Farm. He alleged that he was seriously *525 injured in the crash and that he had only-received $15,000 from the Mitsubishi’s liability insurance, which was not enough to satisfy his damages. Therefore, Harlow argued that the other vehicle was underin-sured, thus triggering the UM provision of the State Farm policy on the BMW. It is unclear from this record whether Harlow or [¡JDixon had obtained the insurance on the Mitsubishi. It is clear, however, that the insurance was not purchased through State Farm. In brief, Harlow states that he “was allowing Dixon to purchase the [Mitsubishi]. Dixon had his own insurance policy on the vehicle, written by Progressive Insurance Company supplying liability insurance and its own UM policy.”
State Farm answered the lawsuit with general denials of Harlow’s claims. State Farm then filed a motion for summary judgment, asserting that its policy provides no coverage for Harlow because he was the owner of the car that hit him. The State Farm policy provides:
Insuring Agreement
Under Uninsured Motor Vehicle Coverage, we will pay nonpunitive damages for bodily injury an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle.
The policy defines “uninsured motor vehicle” this way:
Uninsured Motor Vehicle does not include a land motor vehicle.
[[Image here]]
2. owned by, rented to, or furnished or available for the regular use of you or any resident relative.
The record in this ease consists of State Farm’s policy on the BMW and a document purporting to be from “American Driving Records, Inc.,” apparently a private database service for motor vehicle records. This record provides the following data for the Mitsubishi automobile driven by Dixon:
Registered and Legal Owner
| sReg. Owner:
WILLIE J. HARLOW
451 HOLLY SPRINGS CHURCH COUSHATTA, LA 71019
Legal Owner:
NATIONAL AUTO ACCEPTANCE 2600 BELLE CHASSE HWY 206 GRETNA, LA 70056
The trial judge denied State Farm’s motion for summary judgment. The court stated, in part:
It is argued that uninsured motorist coverage requires the insured to have coverage on each vehicle he owns that he wants uninsured motorist coverage on. The reasoning is the insurance company does not want an insured to cover only one vehicle with uninsured motorist coverage and cover him in all his owned vehicles. In this case, the second vehicle was insured by another company and there was uninsured motorist coverage on the (BMW) owned by the plaintiff. Absence of fraud, it would seem that as a matter of law the summary judgment should be denied.
State Farm timely filed its writ application in this court, which was granted and docketed.

Discussion

The application of the summary judgment rules to insurance coverage is now well-settled. The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. The motion should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P *526 art. 966; King v. Phelps Dunbar L.L.P., 98-1805 (La.06/04/99), 743 So.2d 181; Beck v. Burgueno, 43,557 (La.App.2d Cir.09/17/08), 996 So.2d 404.
AppeIlate review of the grant or denial of a summary judgment is de novo. Jones v. Estate of Santiago, 03-1424 (La.04/14/04), 870 So.2d 1002; Row v. Pierremont Plaza L.L.C., 35,796 (La.App.2d Cir.04/03/02), 814 So.2d 124, writ denied, 02-1262 (La.08/30/02), 823 So.2d 952.
A summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to liability or the amount of damages. La. C.C.P. art. 966(E); Jie v. Certified Lloyds Plan, 34,545 (La.App.2d Cir.04/04/01), 785 So.2d 118.
An insurer seeking to avoid coverage through summary judgment bears the burden of proving that some provision or exclusion applies to preclude coverage. Alexander v. Cornett, 42, 147 (La.App.2d Cir.07/11/07), 961 So.2d 622, writ denied, 07-1681 (La.11/02/07), 966 So.2d 603.
Any exclusion from coverage in an insurance policy must be clear and unmistakable. South Central Bell Telephone Co. v. Ka-Jon Food Stores of Louisiana, Inc., 93-2926 (La.05/24/94), 644 So.2d 357. It is the duty of the insurer to clearly express exclusions or limitations in a liability policy. Little v. Kalo Laboratories, Inc., 406 So.2d 678 (La.App. 2d Cir.1981), writ denied, 410 So.2d 1133 (La.1982). Thus, any ambiguity in an exclusion should be narrowly construed in favor of coverage. Yount v. Maisano, 627 So.2d 148 (La.1993).
The Louisiana insurance statutes provide the substantive framework for this analysis. A Louisiana auto policy must include uninsured/underinsured coverage unless the insured specifically rejects that | ¿coverage. La. R.S. 22:1295.[2] In this case, Harlow purchased and paid for UM coverage for his BMW, the car he was driving at the time he was injured in the accident. Under ordinary circumstances, he would plainly be entitled to the UM coverage he paid for, provided that he could prove that his losses exceeded the liability limit of the policy on the car that hit him.
The Mitsubishi is a “land motor vehicle” (which is undefined but clearly includes automobiles). Whether it is “owned” by Harlow is equivocal. The petition states Harlow’s ownership; Harlow’s brief however, asserts that Harlow was allowing Dixon to purchase the Mitsubishi. In fact, Dixon was driving the car at the time of the accident which could indicate delivery. *527 Who actually bought the insurance covering the Mitsubishi is unknown. In Maloney v. State Farm, Ins. Co., 583 So.2d 12 (La.App. 4th Cir.1991), writ denied, 586 So.2d 544 (La.1991), a UM coverage case in which an agreement of sale for an automobile had been reached but the price not yet paid or delivery made, the court stated:
|fiThe sales of motor vehicles are governed by the Civil Code articles relating to sales, and are not affected by non compliance with the requirements of the Vehicle Certificate of Title Law.
La. C.C. Art. 2456. Completion of Contract by Agreement as to Object and Price.
The sale is considered to be perfected between the parties, and the property is of right acquired by the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.
Thus, LSA-R.S. 22:1406 D(1)(d) supra, is applicable in the instant case. The uninsured motorist coverage of State Farm applicable to the 1971 Plymouth is not available as coverage (because ownership had changed) and that part of the Trial Judge’s decision is reversed, with judgment rendered in favor of State Farm.
Even if you consider Harlow to be the owner of the Mitsubishi, the trial court was unwilling to exclude UM coverage for Harlow, finding that this situation was not necessarily one in which UM coverage would be excluded for an “owned” vehicle. Specifically, the law is written to allow insurers to prevent an insured from collecting UM insurance when they are occupying a vehicle they own but did not cover with UM insurance. La. R.S. 22:1295(1)(e). This is not the situation in this case; Harlow was occupying a vehicle he owned that was covered by UM insurance. State Farm argues that “Harlow should not be allowed to benefit and receive UM benefits under the State Farm policy covering the BMW as the result of his own failure to obtain adequate liability insurance on the Mitsubishi that he also owned.” This is not a valid analogy to La. R.S. 22:1295(1)(e).
Louisiana law requires auto insurance policies to include UM coverage unless the insured specifically rejects that coverage. However, Louisiana does not allow drivers to reject liability coverage, and state law ^requires a minimum amount of liability insurance. Although the record could be clearer on this point, Harlow or Dixon apparently complied with the law and had the statutory minimum amount of liability coverage on the Mitsubishi. Because the insured did everything the law requires him to do and does not appear to be attempting to obtain coverage he did not pay for, there are public policy concerns with allowing the “owned vehicle” exclusion in this case. Harlow is not attempting to collect on both the liability and UM coverage portions of his BMW policy; he is only asking for UM coverage under that policy.

Conclusion

For these reasons, we AFFIRM the decision of the trial court and REMAND for further proceedings. Costs are assessed to defendant, State Farm.
WILLIAMS, J., dissents with written reasons.

. State Farm Fire and Casualty Company was incorrectly referred to as State Farm Mutual Automobile Insurance Company in the original petition and answer. State Farm Fire and Casualty Company filed an amended answer seeking to have all incorrect designations corrected.

. La. R.S. 22:1295 provides, in part:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900, unless economic-only coverage is selected as authorized in this Section.