815 So.2d 889 (2001)
Scotty DUHON, Individually and as Natural Tutor of his Minor Children, Matthew Duhon and Kyle Duhon; and Dawna Duhon,
v.
John B. BAQUET, d/b/a Baquett Seafood, John W. Fontenot, State Farm Mutual Automobile Insurance Company and National Union Fire Insurance Company of Pittsburgh Pa.
No. 01-913.
Court of Appeal of Louisiana, Third Circuit.
December 19, 2001.
Writ Denied March 15, 2002.
*891 Donald G. Cave, Cave Law Firm, Baton Rouge, LA, Counsel for Scotty Duhon and Dawna Duhon.
Edwin G. Preis, Jr., Preis, Kraft & Roy, Lafayette, LA, Counsel for National Union Fire Insurance Company of Pittsburgh, Pennsylvania.
Court composed of HENRY L. YELVERTON, JOHN D. SAUNDERS, and ELIZABETH A. PICKETT, Judges.
YELVERTON, Judge.
The Defendant, National Union Fire Insurance Company, was granted a summary judgment, from which the Plaintiff, Scotty Duhon, appeals. In granting the summary judgment, the trial court ruled that the uninsured motorist coverage rejection form executed by the comptroller of Frank's Casing Crew, National Union's insured, was valid, thereby eliminating any genuine issue of material fact as to whether or not National Union provided UM coverage. For the following reasons, we affirm.[1]
On November 11, 1997, Mr. Duhon was riding as a passenger in a van owned by Frank's Casing Crew & Rental Tools, Inc., when a vehicle driven by John D. Fontenot struck the van from the rear. Mr. Duhon filed suit against several defendants, including National Union. Mr. Duhon claimed that National Union provided uninsured motorist coverage on the Frank's Casing Crew vehicle, and would therefore be liable for any damages in excess of the other insurance policies involved in the dispute.
Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Summary judgments are used to "secure the just, speedy, and inexpensive determination of every action," and "shall be construed to accomplish these ends." Article 966(A)(2). Because of this, summary judgments are favored in Louisiana. Id. Appellate review of a summary judgment is de novo. Schroeder v. Board of Sup'rs, 591 So.2d 342 (La.1991).
Uninsured motorist coverage is required under an automobile insurance policy in not less than the limits of bodily injury liability, unless the named insured rejects the coverage or selects lower limits. La. R.S. 22:1406(D)(1)(a)(i). Louisiana Revised Statute 22:1406(D)(1)(a)(ii) governs the form requirements for these rejections. As written at the time the rejection form was signed for Frank's Casing, Section 22:1406(D)(1)(a)(ii) provided:
After September 1, 1987, such rejection or selection of lower limits shall be made only on a form designed by each insurer. The form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects *892 such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.
The UM statute is to be liberally construed, with statutory exceptions to coverage interpreted strictly. In this way the object of the UM legislation, namely, the promotion of full recovery for innocent automobile accident victims by making UM coverage available for their benefit, may be achieved. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). The burden is on the insurer to prove that the insured rejected in writing UM coverage or selected lower limits. Id.
"[T]he insurer must place the insured in a position to make an informed rejection of UM coverage." Henson v. Safeco Insurance Companies, 585 So.2d 534, 539 (La.1991). The form used by the insurer must afford the applicant the opportunity to make a "meaningful selection" from the three statutory options: (1) UM coverage equal to bodily injury limits in the policy; (2) UM coverage lower than bodily injury limits in the policy; and (3) no UM coverage. Tugwell, 609 So.2d 195.
The National Union form signed by the comptroller of Fred's Casing Crew is in strict compliance with the requirements of the UM statute. It is clear that the form contained the three options identified in Tugwell, making it valid under that jurisprudence. However, Mr. Duhon attacks the validity of the rejection citing several other reasons. We will consider each argument.
First, Mr. Duhon alleges that the form is invalid because there is no reference to any particular policy number on the rejection form. Mr. Duhon relies on the case of Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987), for the proposition that the rejection of uninsured motorist coverage must identify a particular policy of insurance in order to be valid. Our supreme court in Roger stated:
Accordingly, to effect a valid rejection of the UM coverage under La.R.S. 22:1406(D)(1)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection. This narrow reading of La. R.S. 22:1406(D)(1)(a) is in accord with the liberal construction afforded the uninsured motorist statute in order to carry out its objective of protecting an innocent insured who becomes the victim of the negligent uninsured or underinsured motorist.
Id. at 1132 (emphasis supplied).
In Roger, an employee of United Parcel Service (UPS) was injured in an accident with an uninsured motorist. Unlike this case, where a rejection form was designed and issued to the insured by National Union, the issue in that case was whether a letter issued by UPS effectuated a valid rejection of UM coverage in Louisiana. The letter read:
In accordance with our standard procedure and instructions to Liberty Mutual please reject the Uninsured Motorist coverage in the state of Pennsylvania, effective March 1, 1981.
Since this is our standard practice, regarding Uninsured Motorists [sic] coverage in the event any other state changes their law or regulations to allow rejection of this coverage, please do so immediately *893 on the earliest possible effective date.
Id. at 1129.
The Louisiana Supreme Court ruled that the letter was not a valid rejection of UM coverage in Louisiana because the letter was not a definitive rejection of coverage in Louisiana. The court noted that the letter was a clear statement of UPS's rejection of UM coverage in Pennsylvania, but that the other language in the letter was prospective in nature. Since Louisiana had not changed its law after the date of the letter, the court found that the second paragraph of the letter could not suffice as a valid rejection of Louisiana UM coverage. The letter did not state that UM coverage was rejected in Louisiana and thus, was not an unequivocal rejection. Roger, 513 So.2d 1126.
The form issued by National Union in our present case is much different from the letter in Roger. The form contained no such prospective language, and as executed by Frank's Casing Crew, unequivocally showed a desire to reject uninsured motorist coverage.
While it is true that the supreme court mentioned that the rejection form should refer to "a particular policy issued or to be issued," this requirement is not fatal to the rejection form in this case. The "particular policy" language in Roger was dicta. See Schwoch v. Sutor, 559 So.2d 552 (La. App. 2 Cir.1990). The UM statute requires only a writing, setting forth the three options discussed in Tugwell, signed by the insured or his representative. Fred's Casing Crew signed a single document expressly stating that UM coverage was rejected, and the document was signed by an authorized representative. The document provided the necessary options available to Frank's Casing Crew. Inclusion of the policy number on the rejection form was not necessary. Id.; Melton v. Miley, 98-1437 (La.App. 1 Cir. 9/24/99); 754 So.2d 1088, writ denied, 99-3089 (La.1/7/00); 752 So.2d 867. The fact that the rejection form fails to list a policy number, does not invalidate the rejection.
Secondly, Mr. Duhon claims that the form is not adequate in that it does not identify National Union as the insurer. However, "the law does not require that the particular insurer's name appear on the form, just that the form be designed by the insurer." Odom v. Johnson, 97-546, p. 12 (La.App. 3 Cir. 12/10/97); 704 So.2d 1254, 1262, writs denied, 98-778, 98-826, 98-876 (La.5/1/98); 718 So.2d 419, 420, 421. We find this case to be controlling in this matter, making this argument also without merit.
Along with this argument, Mr. Duhon asserts that one could not definitively say that the form pertains to any particular National Union policy, as the rejection form was not appended to the policy provided to Frank's Casing Crew. However, the UM coverage rejection form signed by the insured or his legal representative is conclusively presumed to become a part of the policy when issued, regardless of whether it is physically attached. La.R.S. 22:1406(D)(1)(a)(ii). Therefore, the failure to attach the UM rejection form has no bearing on the issue of its effect.
Additionally, Mr. Duhon claims that the absence of a particular "time period" invalidates the rejection form. This argument, too, is without merit. Louisiana law requires only that a uninsured motorist rejection form "expressly set forth ... that UM coverage is rejected in the State of Louisiana as of a specific date ...." Roger, 513 So.2d at 1132 (emphasis added). The form in question sets forth March 20, 1997, as the date of the execution of the *894 waiver.[2] As such, the coverage was rejected as of that date. Furthermore, Mr. Duhon's assertion that a "time period" be set forth in a coverage waiver is in contradiction logically with Louisiana Revised Statute 22:1406(D)(1)(a)(i), which provides that a validly executed rejection form applies also to subsequent renewal policies. If a term such as the one propounded by Mr. Duhon were included in the rejection, the waiver would expire at the end of the term set forth in the waiver and could not apply to any ensuing renewal of the policy.
Finally, Mr. Duhon argues that the waiver was invalid as it did not inform the insured that failure to reject coverage would result in uninsured motorist coverage equal to the bodily injury liability provided in the policy. However, our jurisprudence plainly establishes that the statutory language of Louisiana Revised Statute 22:1406(D), stating that coverage will be provided by law if not rejected, need not appear on the coverage waiver form. See Thomas v. Safeway Insurance Company, 00-700 (La.App. 3 Cir. 12/6/00); 775 So.2d 1135, writ denied, 01-39 (La.3/23/01); 788 So.2d 426; Pellerin v. Thibodeaux, 98-181 (La.App. 3 Cir. 6/17/98); 716 So.2d 131, writ not considered, 98-1945 (La.10/30/98); 723 So.2d 969. Therefore, the absence of this language from the rejection form does not invalidate the waiver of uninsured motorist coverage.
As the supreme court set forth in Daigle v. Authement, 96-1662, pp. 3-4 (La.4/8/97); 691 So.2d 1213, 1215, "the question before us is not whether the form... was the best form that anyone could possibly devise. Rather, the question before us is whether the form ... was adequate for the purpose intended by the legislature." In order to be adequate in this manner, the form must:
place the insured in a position to make an informed rejection of UM coverage. In other words, the form used by the insurance company must give the applicant the opportunity to make a `meaningful selection' from the three options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage."
Tugwell, 609 So.2d at 197. As noted above, these three options were clearly provided on the coverage waiver, and the decision by Frank's Casing Crew to reject uninsured motorist coverage was undoubtedly an informed one. Therefore, the waiver was sufficient to reject uninsured motorist coverage.
For the reasons assigned, we find that the uninsured motorist coverage rejection form executed by Frank's Casing Crew was valid. Accordingly, we affirm the judgment of the trial court. Costs of this appeal are assessed to the Plaintiff.
AFFIRMED.
SAUNDERS, J., dissents with written reasons.
SAUNDERS, J. dissenting.
Given the strict construction of UM rejection forms mandated by our Supreme Court and the heightened standards in summary judgement proceedings, I cannot agree with the decision reached by the majority.
*895 The language in Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987) is clear. To affect a valid rejection of UM coverage "the insured or his authorized agent must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer" (Emphasis added). Id. at 1132.
Although the majority dismisses this language in Roger as dicta, I cannot. The rejection form in the present case does not indicate a particular policy. Without some type of particular policy language in the waiver form, how are we to know to which policy it pertains. Furthermore, there is no indication whatsoever as to who is the insurer. As Roger clearly requires, the document must somehow indicate the insurer. Any rejection form without these designations is simply not a valid waiver and a poor way of doing business. Moreover, because of these omissions, any attempt by this court to determine the insurer and policy to which this waiver pertains would be akin to reading tea leavesbetter than pure speculation but not by much! Thus, I would reverse the trial court and find this waiver invalid.
NOTES
[1] This case had already been before this court and the Louisiana Supreme Court concerning the renewal status of the policy in question. As that matter has been conclusively decided by the supreme court, we address only the issue of the validity of the coverage rejection form.
[2] During oral argument, counsel for appellant claimed that an affidavit setting forth the date of the execution of the waiver as January 23, 1998 raised an issue of material fact. We disagree. Because the policy in effect at the time of the accident was a renewal policy, the original coverage waiver dated March 20, 1997 still applied to that renewal policy. The second waiver, issued for the renewal policy, is a redundancy, and has no bearing on this case.