869 So.2d 188 (2004)
Linda Porche Knight, Wife of the Late John F. KNIGHT, Sr., Suzanne Knight McCormack, Lynda Knight Rodrigue and John F. Knight, Jr.
v.
Curtis OWENS, Geico Indemnity and Canal Indemnity Company.
No. 03-CA-1064.
Court of Appeal of Louisiana, Fifth Circuit.
February 23, 2004.
*189 Steven T. Richard, William M. Doyle, Metairie, LA, for Appellants.
Andre' C. Gaudin, Meredith M. Miceli, Metairie, LA, for Appellee.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
Plaintiffs appeal from the trial court's ruling that granted summary judgment in favor of defendant on the issue of whether uninsured motorist coverage was validly waived. For the foregoing reasons, the judgment of the trial court is affirmed.

FACTS AND PROCEDURAL HISTORY
On December 8, 1997, John Knight, Sr. was killed when a vehicle driven by Curtis Owens ("Owens") collided with the car in which Knight was a passenger. At the time of his death, Knight, an owner of John's Auto Sales, Inc. ("John's Auto *190 Sales"), had in effect a commercial garage liability policy with Canal Indemnity Company ("Canal").
On August 11, 1998, Knight's wife and three children ("plaintiffs") filed a Survivor's Action and Petition For Wrongful Death, naming Owens and his insurer, GEICO Indemnity as defendants. In a Second and Supplemental Petition, plaintiffs further added Canal as an additional defendant, claiming that it had procured uninsured motorist coverage through the Canal policy.
Canal thereafter filed a Motion for Summary Judgment, which was denied by the trial court. On March 31, 2003, Canal filed a second Motion for Summary Judgment, arguing that the policy issued to John's Auto Sales contained a valid waiver of UM coverage. The trial court granted Canal's Motion for Summary Judgment on May 6, 2003, and plaintiffs timely filed the present appeal.

LAW AND ANALYSIS
On appeal, plaintiffs raise three assignments of error: 1) That the trial court erred in finding that the UM waiver was valid, since the plaintiffs were not advised of the lower limits that Canal allegedly placed on available UM coverage; 2) The trial court erred in finding that material changes in the subject policy did not require the execution of a new UM form, and; 3) The trial court erred in finding that the UM selection form on the 1997-1998 application was properly executed.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate.[1] An appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact remaining to be decided, and whether the appellant is entitled to judgment as a matter of law.[2] The appellate court must consider whether the summary judgment is appropriate under the circumstances of the case.[3] There must be a "genuine" or "triable" issue on which reasonable persons could disagree.[4] Under the amended version of LSA-C.C.P. art. 966, the burden of proof remains on the mover to show "that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." A material fact is one that would matter on the trial of the merits.[5]
In Daigle v. Authement,[6] the Louisiana Supreme Court discussed at length what is needed to constitute a valid waiver of UM coverage.
We have held that the UM statute is to be liberally construed and that a rejection of the coverage provided by law must be clear and unmistakable. Roger, 513 So.2d at 1131. The insurer bears the burden of proof that a rejection of *191 coverage or a selection of lower limits has been legally perfected. Henson [v. Safeco Ins. Companies], 585 So.2d [534] at 539[ (La.1991)]. A valid rejection must be expressly set forth in writing and signed by the insured or his authorized representative. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992); Henson, 585 So.2d at 538.
In 1987, La.R.S. 22:1406 D was amended to require that any rejection or selection of lower limits shall be made only "on a form designed by each insurer." Implicit in the legislature's direction to insurers to design a form, was the responsibility to design a form that would fairly effectuate the intent of the law. The legislature did not mandate that the form be designed in any particular way, nor did it indicate that any particular language was sacrosanct. The legislature had to have anticipated that various insurers might go about the design of the necessary form in different ways ...
In Tugwell, we held that a rejection form used by an insurance company must inform the applicant of the available options regarding UM coverage so that the applicant can make a meaningful selection from among the options provided by the statute. A form does not meet the statutory requirements if it fails to inform the applicant of an available option or forecloses an available option. We recognized in Tugwell that the statute normally provides three options: UM coverage equal to bodily injury limits in the policy, UM coverage lower that those limits, or no UM coverage.
In this case, the following language was contained in the UM selection form at issue:

UNINSURED MOTORIST COVERAGE REJECTION OF SPECIFICATION
In accordance with the provisions of Louisiana Statutes, uninsured motorist coverage automatically equals the bodily injury liability limits of the policy; however, the uninsured motorist coverage may be rejected entirely or written in any limit desired from 10/20 to bodily injury liability policy limits. The applicant does hereby:
[X] Entirely reject uninsured motorist coverage.
OR
[ ] Request uninsured motorist limits of $______ for each person $______ for each accident
We first find that, on its face, the form itself meets the requirements for validity, as the plaintiffs were provided with all options required by statute. Plaintiffs first argue, however, that the UM selection form executed on the 1997-1998 policy was invalid because they allegedly were not advised of lower limits that Canal Indemnity placed on available UM coverage. Specifically, plaintiffs assert that since Canal "apparently did not write UM/UIM coverage up to the $300,000.00 limit on their policy," and that since they were not informed of an alleged lower limit, the UM/UIM rejection form is invalid.
The record shows that Matthew deBlanc was the agent from Continental Insurance who renewed the Canal policy with the Knights for the years 1997-1998. In his deposition testimony, deBlanc testified that the Knights had a "garage policy" in effect that, in general, would provide "premises liability, garage liability, completed operations coverage ... along with... uninsured motorist coverage." deBlanc stated that the 1996-1997 policy issued to the Knights did not provide UM coverage, even though he had discussed that type of *192 coverage with John and Linda Knight. deBlanc further stated that at the time the initial coverage was procured for the 1996-1997 period, and in subsequent renewals, the Knights indicated that the only coverage they wanted to purchase was what was required by the state and the property owner for their lease, and that UM coverage was specifically excluded by the Knights.
deBlanc testified that the 1997-1998 policy issued to the Knights was strictly a renewal of the 1996-1997 coverage as Canal Indemnity required that, every year, an insured select or reject coverage, including UM coverage. When it came time to renew the policy, deBlanc recalled that he had spoken to the Knights about renewing the UM coverage specifically, and that, once again, John Knight indicated that he only wanted to purchase coverage required by the state and his landlord. Linda Knight testified that she had no reason to dispute deBlanc's testimony that he checked off the box that rejected coverage after the Knights had indicated to him that they did not want UM coverage.
The basis of plaintiffs' assignment of error is a portion of deBlanc's deposition testimony wherein he states his belief that Canal would only offer $30,000.00 of UM coverage. deBlanc also went on to state, however, that he declined to pass along this information to the plaintiffs, because the Knights had indicated to him that they did not want to obtain UM coverage.
Canal disputes what they consider to be a misconception on deBlanc's part regarding the potential limits of their UM coverage. The record further shows that Canal had admitted in discovery that uninsured motorists coverage up to $300,000.00 was available to John's Auto Sales, Inc. for the period May 29, 1997 to May 29, 1998 prior to the time that Linda Knight had rejected UM coverage on the 1997-1998 application.
Other than deBlanc's testimony regarding his subjective belief, after a review of the record, we find that the record contains no direct evidence to substantiate the plaintiff's claim that the limit of Canal's UM coverage was, in fact, less than $300,000.00. As defendant points out, however, even if deBlanc had communicate his impression to the Knights, an insured's understanding or misunderstanding of how UM/UIM coverage operates does not invalidate a facially valid rejection of coverage,[7] as is the case here. Accordingly, we find this assignment of error to be without merit.
Plaintiffs next argue that material changes were made to the subject policy after the 1996/1997 application, specifically the deletion of two insureds from the policy, requiring the execution of a new UM form.
The general rule regarding rejection of UM coverage is that the initial rejection of UM coverage by an insured is good for renewal, reinstatement, or substitute policies.[8] In this case, the record shows that Linda Knight, in her deposition testimony, expressed her understanding that the policy in effect at the time of her husbands accident was a renewal of the 1996-1997 policy. The fact that the policy at issue was a renewal was also expressed by deBlanc in his deposition testimony as well.
Other than the deletion of two insureds from the policy, plaintiffs have not asserted that any other material changes were made. Louisiana courts have previously *193 found that the deletion of an insured from a policy is not a material change that requires a policy to be considered new, thereby requiring the execution of another UM waiver.[9] Accordingly, we find this assignment to be without merit.
In their third assignment of error, plaintiffs allege several "defects" in the application form and the UM/UIM Selection Form, which they assert make their apparently valid rejection of UM coverage invalid.
Plaintiffs first argue that the form was invalid because the box that rejected UM coverage was pre-selected, and no explanation of UM/IUM insurance was provided to Linda Knight at the time that she signed the application.
In regard to the issue of a form being pre-selected for a rejection of UM coverage, Louisiana courts have held that the fact that an "X" is placed in the rejection box by someone at the insurance agency does not result in invalidation of the rejection.[10] It is sufficient that the insured or his legal representative check the rejection box or initials next to a mark placed there by the insurer.[11] In this case, the record shows that Linda Knight, who had the authority to sign this kind of document on behalf of John's Auto Sales, signed immediately below the checked box which clearly indicated an entire rejection of UM coverage.
In addressing plaintiffs second argument, we note that the courts have previously found valid rejections of UM coverage even in light of contentions that an insured was handed a completed application to sign rejecting uninsured motorist coverage without any prior discussion of a rejection of UM coverage.[12] In this case, however, where the policy was simply a renewal, we find that even if, contrary to deBlanc's testimony, the issue of UM coverage was not previously discussed, the form provided was sufficient to give the plaintiffs all of their legally available options. Further, a person who signs a written document is presumed to have knowledge and understanding of that which he signs.[13]
Plaintiffs next assert that the form was invalid because it does not make a type-written reference to the policy to which the form applies.
As the Louisiana Supreme court noted in Roger v. Estate of Moulton:[14]
Accordingly, to effect a valid rejection of the UM coverage under La.R.S. 22:1406(D)(1)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection. This narrow reading of La. R.S. 22:1406(D)(1)(a) is in accord with the liberal construction afforded the uninsured motorist statute in order to carry out its objective of protecting an innocent insured who becomes the victim *194 of the negligent uninsured or underinsured motorist.
In Duhon v. Baquet,[15] however, the Third Circuit addressed a similar issue of interpreting whether the above cited language from Roger mandated that the absence of a type-written reference to the policy in an application was a fatal flaw to a UM rejection form. The Duhon court reasoned:
While it is true that the supreme court mentioned that the rejection form should refer to "a particular policy issued or to be issued," this requirement is not fatal to the rejection form in this case. The "particular policy" language in Roger was dicta. See Schwoch v. Sutor, 559 So.2d 552 (La.App. 2 Cir. 1990). The UM statute requires only a writing, setting forth the three options discussed in Tugwell, signed by the insured or his representative.
The Third Circuit concluded that where an authorized representative of the insured had signed a document that both provided the necessary options and expressly stated that UM coverage was rejected, the fact that the rejection form failed to list a policy number did not invalidate the rejection.[16] Similarly, in this case, Linda Knight, an insured under the policy, was provided with all three legal options regarding UM coverage and clearly indicated that she rejected it entirely.
In addressing several other alleged technical errors in the renewal application form, after a review of the record and applicable case law, we further find that the remaining issues raised by plaintiffs fail to constitute a genuine issue of material fact sufficient to defeat summary judgment on the issue of whether the plaintiffs' UM waiver was valid. Accordingly, we find those issues to be without merit as well.
For the foregoing reasons, the judgment of the trial court, granting defendant's summary judgment, is affirmed.
AFFIRMED.
NOTES
[1] Bua v. Dressel, 96-79 (La.App. 5th Cir.5/28/96), 675 So.2d 1191; writ denied, 96-1598 (La.9/27/96), 679 So.2d 1348; citing Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180.
[2] Tassin v. City of Westwego, 95-307 (La.App. 5th Cir.12/13/95), 665 So.2d 1272.
[3] Rowley v. Loupe, 96-918 (La.App. 5th Cir.4/9/97), 694 So.2d 1006.
[4] Id. at 1008.
[5] J.W. Rombach, Inc. v. Parish of Jefferson, 95-829 (La.App. 5th Cir.2/14/96), 670 So.2d 1305.
[6] 96-1662 (La.4/8/97), 691 So.2d 1213.
[7] Autin v. Wilson, 98-19 (La.App. 5 Cir. 5/27/98), 714 So.2d 257.
[8] Bryant v. Viking Ins. Co. of Wisconsin, 579 So.2d 1241 (La.App. 3rd Cir.1991).
[9] Lewis v. Lenard, 29,529 (La.App. 2 Cir. 5/7/97), 694 So.2d 574.
[10] Odom v. Johnson, 97-546 (La.App. 3 Cir. 12/10/97), 704 So.2d 1254; Writ denied, XXXX-XXXX (La.5/1/98), 718 So.2d 419.
[11] Id.
[12] Thomas v. Goodson, 26,356 (La.App. 2 Cir. 12/7/94), 647 So.2d 1192.
[13] Oncale v. Aetna Casualty and Surety Co., 417 So.2d 471 (La.App. 1st Cir.1982).
[14] 513 So.2d 1126 (La.1987).
[15] Duhon v. Baquet, 2001-913 (La.App. 3 Cir. 12/19/01), 815 So.2d 889; Writ denied, XXXX-XXXX (La.3/15/02), 811 So.2d 914.
[16] Id.