873 So.2d 811 (2004)
Lori Dunn, Wife of/and Mark DUNN, Individually and On Behalf of the Minor, Chad Dunn
v.
Mark A. PONS and Allstate Insurance Company.
No. 03-CA-1486.
Court of Appeal of Louisiana, Fifth Circuit.
April 27, 2004.
*812 Cameron C. Gamble, New Orleans, LA, for Plaintiffs/Appellants.
Lucia G. Hawks, Law Offices of Harold G. Toscano, New Orleans, LA, for Defendant/Appellee, Allstate Insurance Company Encompass Insurance.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and THOMAS F. DALEY.
SOL GOTHARD, Judge.
Plaintiffs, Lori and Mark Dunn on behalf of the minor child Chad Dunn, bring this appeal from a trial court judgment that granted a defense motion for summary judgment and dismissed the lawsuit with prejudice. For reasons that follow, we vacate the summary judgment and remand the matter to the trial court for further proceedings.
Plaintiffs filed this personal injury lawsuit to recover damages sustained as a result of an automobile accident in which their vehicle was rear-ended by a vehicle driven by Mark Pons. Plaintiffs also named Allstate Insurance Company (Allstate) as defendant in the suit, alleging that Allstate insured the vehicle driven by Mr. Pons, and is also the provider for the uninsured/underinsured motorist coverage for plaintiff, Mr. Dunn.
Allstate, in its capacity as uninsured/underinsured motorist provider for plaintiff, filed a motion for summary judgment on the basis that on the date of the accident the policy issued in favor of Mark Dunn did not include uninsured motorist coverage. The motion for summary judgment was continued without date by consent of the parties.
Plaintiffs filed a motion to dismiss defendants, Mark Pons and Allstate as his liability insurer with prejudice. In that motion plaintiffs reserved their rights to proceed against Allstate in its capacity as their uninsured motorist carrier, and any related defendant. That motion was signed on January 22, 2001.
In a supplemental and amending petition, plaintiffs added Elliott J. Raley, III[1] as a defendant. Mr. Raley is an agent of Allstate who wrote the policy on the Dunns. The petition alleges Mr. Raley misrepresented the insurance coverage regarding the uninsured motorist coverage. The petition further makes claims against Allstate for acting in bad faith in denying the claim for uninsured losses.
Allstate re-urged its motion for summary judgment and the matter was set for hearing. After hearing the arguments of counsel and reviewing the memoranda of law, the trial court granted the motion in favor of Allstate and Mr. Raley and dismissed plaintiffs' action with prejudice. It is from that judgment that plaintiffs appeal.
In brief to this court, plaintiffs argue that there are material facts remaining to be decided with regard to the causes of action against both Allstate and Mr. Raley which would preclude summary judgment. Allstate counters that a valid waiver of UM coverage was signed by Mr. Dunn in *813 1998 which extended to the renewal policy in force at the time of the accident.
La. C.C.P. art. 966 provides that summary judgment should be granted when the pleadings, depositions and other documents show there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law. The article also declares that summary judgment procedure is favored and must be construed to accomplish the just, speedy and inexpensive determination of most actions. The burden of proof remains with the mover.
Appellate courts review summary judgments de novo under the same criteria that governs the district court's consideration of whether summary judgment is appropriate. Knight v. Owens, 03-1064 (La.App. 5 Cir. 2/23/04), 869 So.2d 188. We must consider whether the summary judgment is appropriate under the circumstances of the case and whether there is a genuine or triable issue on which reasonable minds could disagree. Id. A material fact is one that would matter in the trial on the merits. Id.
The undisputed facts are that Mr. Dunn had a valid automobile liability insurance policy with Allstate at the time of the accident. Further, the record shows that Mr. Dunn signed an uninsured motorist waiver on October 26, 1998 in a renewal of his automobile insurance policy with Allstate. The effective dates of the renewal policy were September 12, 1998 to March 12, 1999. That waiver reads as follows:
I do not want UMBI (Uninsured Motorist Bodily Injury) coverage. I understand that I will not be compensated through UMBI coverage for losses arising from an accident caused by an uninsured/underinsured motorist.
The choice I made by my initials on this form will apply to all persons insured under my policy. My choice shall apply to the motor vehicles described in the policy and to any replacement vehicles, to all renewals of my policy, and to all reinstatement or substitute policies until I make a written request for a change in my Bodily Injury Liability Coverage or UMBI coverage.
The policy was renewed every six months thereafter. There were several changes to the policy which involved adding cars and drivers, and changing coverage. On April 26, 2000, a correspondence sent from Mr. Raley to Mr. Dunn confirms the deletion of one or more drivers and a change in use of the 1991 Toyota Pickup. The letter also states:
The coverages and limits you carry for your vehicles, and the costs of those coverages, are listed in detail on the enclosed Amended Policy Declarations. By comparing this Policy Declarations with the most recent Declarations mailed to you, you can see any changes in detail.
A correspondence from the Allstate Agency Support Center in Jackson, Mississippi to Mr. Dunn reflects more extensive changes to the policy effective April 26, 2000, including the addition of a driver and changes in use or driver in all three insured autos. This correspondence also contains the identical language as quoted above regarding the reference to the Amended Policy Declarations. Attached to that correspondence is Louisiana Automobile Policy Amendment AU2424 which states that "economic-only uninsured motorists coverage is added to the policy." On August 20, 2000 the accident at issue herein occurred.
Also contained in the record is a form letter dated November 30, 2000 that was sent from the Allstate home office in Illinois that explains the economic-only uninsured motorist coverage. The letter states:

*814 If your Allstate auto insurance policy was in effect before September 6, 1998 and you or any other insured person under your policy was involved in an accident on or after September 6, 1998 with an uninsured or under underinsured motorist who was at fault in any way for the accident, you should contact your Allstate agent or any Allstate Claim Office to determine whether uninsured motorists coverage applies. Coverage may apply to your loss, even if your policy documents at the time of the accident indicated that you did not have uninsured motorists coverage on your policy. (emphasis in original)
In his deposition, Mr. Dunn testified that, although he did not recall signing the waiver of uninsured motorist (UM) coverage in 1998, he recognized his signature. He further testified that when he received the correspondence dated November 30, 2000 indicating he may have UM coverage, he called Mr. Raley and was told that he did have the coverage. Mr. Dunn did not recall telling Mr. Raley that he did not want the uninsured motorist coverage because of the cost.
The record also contains an affidavit from Mr. Dunn that states he requested full coverage, including UM from Mr. Raley before the accident occurred and assumed he had the coverage when he received the endorsement to the policy sent with the April 26, 2000 changes. He further stated that he called Mr. Raley after receiving the correspondence from Allstate's home office, and was informed that he had UM coverage.
Lori Dunn also testified by deposition. She assumed they had uninsured motorist coverage when she got the amended policy. Although Mrs. Dunn could not recall the date she received the amendment to the policy, she knew that it was before the accident. When they received the letter from Allstate after the accident, they did not understand it so they decided to call their agent. She did not have any conversations with Mr. Raley directly because her husband handled that. However, when her husband completed his telephone conversation with Mr. Raley, Mr. Dunn told his wife they had the coverage.
In his deposition, Mr. Raley stated that the Dunns waived UM coverage in 1998 to cut the cost of insurance. Mr. Raley further testified that when the Dunns added their daughter to the policy, his office did a full review of coverages with them. He testified that Ken McKeever, an employee of Mr. Raley, had a personal meeting with them in which he offered the Dunns UM coverage, but they declined to add the coverage. Mr. Raley admitted that he did not personally do the insurance review in April of 2000. However, he did speak to them after the accident when they requested he add UM coverage, but he could not recall the date.
It is clear from the transcript that the trial court reviewed the applicable law and ruled that the waiver executed in October of 1998 was valid and continued to apply to subsequent renewals of the policy. Allstate argued successfully that the 1999 amendments to La. R.S. 22:1406(D), effective September 6, 1998 that upheld the validity of a properly executed waiver of UM coverage on renewals regardless of changes made in the policy, makes the waiver signed by Mr. Dunn effective on the date of the accident. Allstate further concludes that changes in drivers and substitutions of vehicles made since the waiver did not constitute a new policy for the purposes of requiring a new waiver form.
While we do not quarrel with Allstate's argument on that issue, we find the trial court erred in granting the summary judgment. The issue before the trial court and *815 before us in this de novo review was whether Mr. Dunn requested a preformation of his policy in his dealings with Mr. Raley. Did Mr. Dunn ask Mr. Raley to add UM coverage to his policy after the waiver was executed? Did Mr. Raley, or someone in his office inform Mr. Dunn that the policy was reformed? In this regard there is clearly a conflict in the factual presentations made by Allstate and Mr. Dunn. Mr. Dunn avers that he requested UM coverage in 2000, and thought he had it when he received the Amendatory Endorsement indicating it changed the policy. Mr. Raley denied that Mr. Dunn made such a request, although Mr. Raley admits that he did not personally do the insurance review with Mr. Dunn in April of 2000. Further, there is a conflict in testimony about what Mr. Dunn was told by Mr. Raley, or someone in his office regarding UM economic-only coverage after the accident.
Allstate argues that an Amendatory Endorsement alone does not require a new waiver. Again, Allstate goes beyond the issue at hand which is restricted to whether there is a material issue of fact undecided. A summary judgment is not a substitute for a trial on the merits. Pye v. Insulation Technologies, Inc., 97-237 (La. App. 5 Cir. 9/17/97), 700 So.2d 892, writ denied 97-2571 (La.12/19/97), 706 So.2d 461. The mover has the burden of affirmatively showing that there is no genuine issue of material fact. Id. 700 So.2d at 893.
In Raymond v. Zeringue, 422 So.2d 534 (La.App. 5 Cir.1982) this court stated:
A written insurance contract can be reformed to conform to the original intention of the parties thereto, whether for mutual error or for the negligent, mistaken or fraudulent conduct of the agent who issues the policy. If an insurance agent knows of a policyholder's true intention as to the coverage desired, the insurance company is bound by the agent's knowledge, and a policy erroneously issued will be reformed so as to conform to the original intention. An insurer is bound by its agent's actions in completing a policy application.
(citations omitted)
Id. 422 So.2d at 536
The issue of whether Mr. Dunn requested a reformation in his policy to include UM coverage is a material issue of fact which is not sufficiently settled by the conflicting affidavits and deposition testimony. Accordingly, we find the trial court erred in granting summary judgment. We vacate the summary judgment and reinstate plaintiffs' action, and we remand the matter to the trial court for further proceedings.
VACATED AND REMANDED
NOTES
[1] It appears Mr. Raley's name was misspelled in the petition as Riley.