877 So.2d 269 (2004)
Cong DUONG and Yen Nguyen, Plaintiffs-Appellees
v.
Carolina SALAS, Allstate Insurance Company and USAgencies Casualty Insurance Company, Defendants-Appellant.
No. 38,613-CA.
Court of Appeal of Louisiana, Second Circuit.
June 23, 2004.
*270 Bodenheimer, Jones, Szwak & Winchell, LLP by Mary E. Winchell, Shreveport, for Appellant, U.S. Agencies Casualty Insurance Company.
Peters, Ward, Bright & Hennessy by J. Patrick Hennessy, Shreveport, for Appellees.
Before BROWN, STEWART and CARAWAY, JJ.
CARAWAY, J.
Through an interpreter, the Vietnamese plaintiff obtained automobile liability insurance and purportedly signed a waiver of uninsured motorist coverage. Following an accident with an underinsured motorist, the plaintiff seeks uninsured motorist coverage from his insurer, challenging the validity of his waiver. The trial court determined that the plaintiff had no capacity to read and understand English and that the waiver of uninsured motorist coverage was invalid. Finding no manifest error in the trial court's ruling, we affirm.

Facts
On October 31, 1999, Cong Duong and his wife, Yen Nguyen, were involved in an automobile accident with a vehicle driven by Carolina Salas. As a result, Duong and his wife filed suit naming Salas, her liability insurer, Allstate Insurance Company, and their own insurer, USAgencies, as defendants. Plaintiffs' claim against USAgencies arises out of the uninsured/underinsured motorist ("UM") coverage portion of the policy which USAgencies alleges was rejected by Duong on three separate occasions. Allstate paid its policy limits of $20,000.00 in a settlement agreement pursuant *271 to which it and Salas were released from the suit.
The trial proceeded against USAgencies on the UM coverage. The parties stipulated that the underlying coverage to which any potential underinsured coverage might apply was $20,000.00, and that the policy limits of any such coverage that might be found to exist under the USAgencies' policy would be $10,000.00. The parties also stipulated that the plaintiffs' damages exceeded $30,000.00. Therefore, the only issue for the trial court to consider was whether the plaintiffs were entitled to UM coverage under their USAgencies policy.
USAgencies submitted into evidence copies of the original insurance application purportedly executed on March 30, 1999, and two successive endorsed applications dated May 11, 1999, and July 13, 1999. The insured's signatures on all three sets of documents are distinctly different from each other. The May 11, 1999 application was executed after it was determined that Duong had not obtained a Louisiana driver's license at the time he completed the application on March 30, 1999. The July 13, 1999 application occurred because of the addition to the policy of another vehicle, a 1988 Toyota Camry. Each application was purportedly executed by Duong and each is accompanied by a UM rejection form also purportedly executed by Duong on the three separate dates. The parties agreed to the introduction of the documents but not to the authenticity of the signatures affixed thereto. Lastly, plaintiffs submitted into evidence a copy of Duong's driver's license issued on May 10, 1999.
On the UM coverage issue, the trial court heard from Duong, Mr. Tran, Duong's U.S. sponsor, and Daphne Verhayden, the USAgencies' representative who sold Duong the policy in question. Duong testified through an interpreter that he and his wife came to this country from Vietnam around February 1999 and that with Tran as their sponsor, they moved to Shreveport. When they arrived, Duong took a job at a carpenter's shop owned by Mr. Hoe, also from Vietnam. Duong testified that he does not speak English.
Duong testified he obtained a 1987 Nissan Stanza and a driver's license around March of 1999, after which his sponsor took him to purchase insurance on the vehicle. Duong denied that the signatures on the applications purportedly executed on March 30, 1999 and May 11, 1999 were his, but admitted that he executed the application dated July 13, 1999. Specifically, he admitted that the signature on the UM rejection form for the July 13 application belonged to him. This form reflects Duong's initials next to the option which reads:
I do not want UMBI Coverage. I understand that I will not be compensated through UMBI coverage for losses arising from an accident caused by an uninsured/under insured motorist.
Duong testified, however, that he did not understand any of the documents which he signed as he was unable to read in English. He stated that Tran speaks very little English, but that he explained to Duong that Duong needed to sign the documents in order to obtain insurance. Accordingly, he signed them. He denied, however, that Tran explained to him the details of the documents he was signing. Duong was unable to answer any questions regarding the content of the documents at trial.
Tran, also through an interpreter, testified that he took Duong to USAgencies on two different occasions to obtain insurance. While he confirmed that he speaks and reads limited English, he testified that the *272 UM rejection form was not explained to him by USAgencies nor did he explain it to Duong. To the contrary, Tran testified that he needed the help of his own son when he purchased liability insurance so that his son could assist him in understanding the documents. Furthermore, Tran testified that he does not understand the function of UM coverage. He confirmed, however, that on each occasion he accompanied Duong, Duong signed documents although he could not state specifically what documents he signed.
Daphne Verhayden testified that at the time of trial she was employed as a license producer for USAgencies and that she had been employed by the company for over five years. In March of 1999, however, Verhayden was a customer service representative who had been employed with USAgencies for about one year. As a customer service representative it was her job to help customers who wanted to make an application for insurance and to collect payments from customers. Verhayden testified that Duong and a friend came into the USAgencies wanting to purchase insurance. She asked for his driver's license, registration, title and bill of sale, and filled in the necessary paperwork.
Verhayden testified that she spoke with Duong and was given no indication that he or Tran could not speak English. To the contrary, Verhayden was certain Duong could and did speak English. She testified that she went over the application with him and specifically explained the UM rejection form. After doing so, Duong allegedly indicated to her that he did not want UM coverage, but only that coverage which "would make him legal to drive on the road."
Duong then allegedly signed the application, the UM rejection form, and the named driver exclusion endorsement excluding his wife as a covered insured. According to Verhayden, Duong then returned on July 13, 1999, and completed an endorsed application to his policy in order to add coverage for another vehicle, namely a Toyota Camry. When he did so, Verhayden testified that Duong signed a new set of documents including another UM rejection form. Verhayden also testified that she witnessed Duong come in on one other occasion although he was assisted by another salesperson on that date.
The trial court concluded in its written reasons for judgment rendered on August 6, 2003, that there had been no admission as to Duong's signature on the UM rejection forms and that even if Duong had signed them, he did not sufficiently understand the English language so as to have effectively waived under insured motorist coverage. Therefore, the court awarded Duong damages to be paid by USAgencies in the amount of $10,000.00. A final judgment ordering USAgencies to pay this sum to the plaintiffs was signed on August 18, 2003. The instant appeal followed.

Discussion
Despite the signed waiver of UM coverage, Duong claimed at trial that the waiver was invalid since he could not read or speak English and since no one explained the waiver to him. He therefore attacks his consent to the contract waiver.
A party's consent to a contract may be vitiated by error. La. C.C. art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La. C.C. art. 1949.
A written insurance contract can be reformed to conform to the original intention of the parties thereto, whether for mutual error or for the negligent, mistaken or fraudulent conduct of the agent who issues the policy. If an insurance *273 agent knows of a policyholder's true intention as to the coverage desired, the insurance company is bound by the agent's knowledge, and a policy erroneously issued will be reformed so as to conform to the original intention. An insurer is bound by its agent's actions in completing a policy application. Dunn v. Pons, 03-1486 (La.App. 5 Cir. 4/27/04), 873 So.2d 811; Raymond v. Zeringue, 422 So.2d 534 (La.App. 5 Cir.1982).
The law requires that a liability policy issued in Louisiana has to contain UM benefits in the amount "not less than the limits of bodily injury liability provided by the policy" unless the insured validly rejects UM coverage or selects lower limits. However, such UM coverage is not required where any insured named in the policy in writing rejects the coverage and opts not to select lower limits. La. R.S. 22:1406(D)(1)(a).
A valid rejection must be in writing and signed by the named insured or his legal representative. The insurer must place the insured in a position to make an informed rejection of UM coverage. The form used by the insurance company must give the applicant the opportunity to make a meaningful selection from his options provided by statute: (1) UM coverage equal to bodily injury limits in the policy; (2) UM coverage lower than bodily injury limits in the policy; or (3) no UM coverage. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992); Thomas v. Goodson, 26,356 (La. App.2d Cir.12/7/94), 647 So.2d 1192. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. La. R.S. 22:1406(D)(1)(a)(ii).
This statute embodies strong public policy and is to be liberally construed in favor of coverage, such that statutory exceptions to the UM coverage requirements are interpreted strictly. Croker v. Reliance Nat'l Indem. Co., 00-0474, 00-0475, & 00-0476 (La.App. 1st Cir.5/11/01), 800 So.2d 4. Where the validity of a rejection of uninsured motorist coverage is at issue, the insurer bears the burden of proving that the insured rejected such coverage in writing or selected lower limits. Tugwell, supra; Dixon v. Gene Moody Trucking, Inc., 36,420 (La.App.2d Cir.10/23/02), 830 So.2d 392. Once the insurer has shown that a rejection form is valid, the burden shifts to the insured to prove otherwise. Dixon, supra.
The coverage for uninsured motorist risk as statutorily provided is a "cause" within the meaning of La. C.C. art. 1949 underlying the policy of insurance and intended for the benefit of the insured. Its importance was well known to USAgencies, upon which the law placed the burden of obtaining a clear rejection or waiver of coverage. Duong attempted to prove at trial that USAgencies also knew that his waiver of UM coverage was executed in error because of his inability to understand English.
The factfinder's determination as to whether Duong was sufficiently proficient in basic English so as to understand the nature of the UM rejection form is a factual determination not to be disturbed on review unless clearly wrong or absent a showing of manifest error. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Rosell v. ESCO, 549 So.2d 840 (La.1989).
USAgencies challenges the trial court's conclusion on the basis that Duong signed these documents on three separate occasions *274 and that he was well advised of the waiver by Tran on all three occasions. These assertions, however, were disputed at trial, allowing for the trier-of-fact to conclude otherwise.
First, the evidence is not conclusive that Duong signed the UM rejection form on three separate occasions. To the contrary, Duong testified that only the signature on the July 13, 1999 UM rejection form was his. This is substantiated by the fact that the signature on the three separate forms are different. It is also noteworthy that Duong's license, issued on May 10, 1999, bears a signature most similar to that on the UM rejection form of July 13, 1999, the one confessed by Duong as being his.
Second, the record does not support the assertion that Duong was accompanied by Tran on all three separate occasions. Daphne Verhayden, USAgencies' employee, testified that she assisted Duong on both March 30, 1999, and July 13, 1999, but that Tran only accompanied Duong on the first of these visits. Duong and Tran both testified that Tran was only present on March 30, 1999, and May 11, 1999. Furthermore, the record strongly suggests that while Tran may speak more English than Duong, his English is by no means good.
The record before us supports the trial court's conclusion that Duong was not sufficiently proficient in the English language to understand the UM rejection form. Duong had only arrived in the United States from his native Vietnam about one month before making his initial application for insurance with USAgencies, and less than six months before signing the final application and UM rejection form on July 13, 1999. While Verhayden testified that Duong had spoken English to her, the trial court could conclude to the contrary that Duong had no capacity to read and understand the UM waiver and that his incapacity was known or should have been known to USAgencies. Because the trial court's findings are reasonable in light of the record reviewed in its entirety, this court is precluded from reversing those findings, even if it were convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990).
Our conclusion that a signatory's inability to read, write, or speak the English language, and thus, inability to understand the nature of that which he signs, is sufficient to warrant the rescinding of an agreement is not without precedent. See Lervick v. White Top Cabs, Inc., 10 So.2d 67 (La.App.Orl.1942); Davis v. Whatley, 175 So. 422 (La.App. 1st Cir.1937). Thus, in keeping with the policy that statutory exceptions to the uninsured motorist coverage requirements are to be strictly construed, we find the rejection of UM coverage under the present circumstances was invalid.

Conclusion
Accordingly, the judgment of the trial court finding that UM coverage existed under Duong's USAgencies' insurance policy and awarding him $10,000.00 in damages under said coverage is affirmed. Costs of this appeal are assessed to USAgencies.
AFFIRMED.