bSOL GOTHARD, Judge.
Defendants, David P. Flettrich and Philip J. Flettrich, III, in their capacities as independent co-administrators of the- successions of Philip J. Flettrich, Jr. and Marietta Dufrene Flettrich (hereinafter “the Flettriches”), appeal from a judgment granting plaintiffs, Jefferson Parish Hospital District No. 1, d/b/a West Jefferson Medical Center (hereinafter “WJMC”), motion for partial summary judgment. For the following reasons, we affirm the judgment of the trial court.
On February 6, 2003, WJMC filed a petition for expropriation against Mr. Phillip J. Flettrich, Jr. seeking to expropriate four lots of immovable property, with improvements, situated in Jefferson Parish: Lots 19 and 20, bearing the municipal address of 926 Avenue B, Marrero, Louisiana and Lots 21 and 22, Avenue C, Marrero, Louisiana (hereinafter collectively “the Property”) for an expansion project. Mr. Flettrich filed “Affirmative Defenses, Answer, Reconventional | ^Demand and De *941 mand for Jury Trial”[1] on February 28, 2003. On April 22, 2003 Mr. Flettrich filed a “Peremptory Exception of Non-Joinder of a Party under Articles 641 and 642”[2] and on April 24, 2003, WJMC filed a supplemental and amending petition adding Mr. Flettrich’s "wife, Mrs. Marietta Du-frene Flettrich, as a defendant.[3]
On May 21, 2003, WJMC filed a motion for partial summary judgment oh the issue of WJMC’s right and ability to expropriate the Property. On July 16, 2003 the trial judge granted WJMC’s motion and, pursuant to La.R.S. 19:8, scheduled a jury trial to determine the compensation to which defendants are entitled as a result of WJMC’s expropriation of the Property.
On March 26, 2004 a consent judgment was filed by the parties wherein it was ordered, adjudged and decreed that WJMC shall take the Property by expropriation, effective March 30, 2004, and that any occupants of the Property were to vacate it on' or before forty-two (42) days from February 17, 2004 or by March 30, 2004. It was agreed that by virtue of said taking, <CWJMC shall become the owner of the Property vested with all right, title and interest to the Property.” It was further ordered, adjudged and decreed that “by virtue of this Consent Judgment, that the Property is transferred, subject to the terms and conditions hereof.” WJMC agreed to pay the Flettriches $196,000 and deposit into the registry of the court an additional $106,000 on or before March 29, 2004. The Flettriches reserved “all rights and claims at trial or on appeal, that they may have, relative to expropriation, compensation, damages and loss.” It was “specifically acknowledged that the mere taking of an appeal by the Flettriches shall not in any |4way divest WJMC’s ownership of the Property; WJMC’s ownership of the Property can only be divested by a final judgment reversing this Court’s ruling that WJMC was entitled to expropriate the Property.”
On May 12, 2004, WJMC filed a motion to certify the partial summary judgment as final and on June 8, 2004 a judgment was filed designating the partial summary judgment as a final judgment and immediately appealable. On June 30, 2004, the Flettriches filed a motion appealing the partial summary judgment.
WJMC’s supporting documentation for their motion for partial • summary judgment included affidavits by Mr. Gary Muller (President and CEO of WJMC) and Mr. Gary Fitzjarrell (Construction Project Manager for WJMC), and a copy of the “WJMC Master Facility Planning Process Summary.”
In his affidavit, Mr. Muller stated that in order to meet the expanding and ever-evolving healthcare needs of the citizens of the West Bank of Jefferson Parish, WJMC *942 adopted a “Master Facility Plan” (hereinafter “the Plan”) designed to expand, modify, upgrade and renovate the campus of West Jefferson Medical Center. The Plan was developed after years of consultations.
Mr. Muller further stated that the Flett-rich Property was located within the real estate which WJMC must acquire in order to implement the Plan. He referenced page 1-3 of the Executive Summary of the Master Facility Plan Process Summary, wherein it states under Planning Goals— Site, “[a]cquire property along Avenue B, Avenue C and Tenth Street over the next three to five years.” The lots at issue here are located on Avenue B and Avenue C. Specifically, the Flettrich Property would be used for the relocation and expansion of WJMC’s new Child Care Center. According to Mr. Muller, recruiting and retaining employees, such as nurses, is an extremely competitive endeavor which WJMC engages in on a daily basis. WJMC determined that it is competitively advantageous to provide nursery 1 sand early child development/educational services to employees’ children as a benefit to its employees.
Mr. Muller’s affidavit explained that WJMC’s Support Services Facility, which provides utility services, including power and air conditioning/heating, to the buildings on WJMC’s campus, is over forty (40) years old and has to be replaced. It cannot be demolished until a new Support Services Facility is constructed so that, upon demolition of the existing facility, the new one can immediately come on line. The old location will be used to construct an East Patient Care Pavilion and the new Support Services Facility will be located at the site of the existing Child Care Center. Thus, the existing Child Care Center would have to be relocated to another site in order to make way for the construction of the new Support Services Facility.
WJMC concluded that it was most advantageous to maintain a contiguous campus. Therefore, WJMC determined that the new Child Care Center and the Support Services Facility should be included in the contiguous campus. WJMC also determined that the new Child Care Center should be constructed in a location which would afford expansion capabilities, thereby removing the need to relocate it again in the future.
In his affidavit, Mr. Gary Fitzjarrell reiterated many of the assertions made by Mr. Muller. Mr. Fitzjarrell, a licensed architect and Construction Project Manager for WJMC, stated that he was thoroughly familiar with the Plan and was responsible for its continued implementation. According to Mr. Fitzjarrell, providing childcare services for its employees was among those services which WJMC had identified as important for it to function and be competitive in the marketplace. Because of present and anticipated increases in employees, WJMC was building a childcare center roughly 40% larger than the current one. Additionally, the new childcare center was being relocated in an area which was1 fimore conducive to the overall scheme of the Plan, which is to build key support services closer to core clinical activities and patient rooms. According to Mr. Fitzjarrell, the Property would be used as an expansion area for the new childcare center in the form of a playground and staff parking.
The Flettriches’ supporting documentation for their opposition to WJMC’s motion for partial summary judgment included the depositions' of Mr. Gary Muller and Mr. Gary Fitzjarrell and a single-paged exhibit, “Bovis Lend Lease Consulting Master Site Plan” dated July 31, 2000.
In his April 21, 2003 deposition, Mr. Muller stated that planning consultants hired by WJMC recommended relocating *943 the childcare center. It was costlier to leave the childcare center where it was. He also stated that when the Plan was approved, WJMC knew the childcare center had to be relocated but did not specifically say it had to be anywhere. WJMC considered various relocation alternatives, including a commercial site (Tenet) located on the other side of 10th Street from the Property. The Property was chosen because WJMC wanted to make the childcare center more accessible to the flow of traffic and WJMC already owned property at the corner of the Westbank Expressway Service Road and Avenue C. Also, WJMC looked at the acquisition cost for the Tenet property and found it was extremely high relative to other properties. He also stated that WJMC tried to leave existing businesses in the area alone.
In his April 21, 2003 deposition, Mr. Fitzjarrell stated that the Flettrich property would be used for expansion of the childcare education center, a play yard, and staff parking. When asked if he knew if anybody considered building the childcare center on the Tenet property he said, “I don’t think so because it was the anticipation of the master plan to develop the building in layers, in levels, to build out.” He further stated, “If we would have built a childcare education center on that site, we’d lock ourselves in and then have to move it again.” Mr. Fitzjarrell |7testified that the acquisition of the Flettrich Property was conducive to the public interest because it was for the expansion of the childcare center, a service WJMC needed to provide to retain good employees and continue to be a leader in the healthcare market. When asked if there was any architectural reason that the childcare center should be located on the Flettrich Property, Mr. Fitzjarrell stated that the location is, in his “opinion as an architect, an excellent location because it is not on the periphery of the campus, but it is still easily accessible from the hospital.” Additionally, it was a “correct siting ... because the expansion takes it within the property.”
At the trial court’s hearing on the motion for partial summary judgment, the Flettriches stipulated that WJMC has the general authority to expropriate property. There are no material facts in dispute. Therefore, the only issue before this Court is whether the trial court erred in finding that, as a matter of law, WJMC’s proposed use of the Flettrich property constituted a public and necessary purpose.
The plaintiff may move for a summary judgment in his favor for all or part of the relief for which he has prayed. La.C.C.P. art. 966(A)(1). The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). After adequate discovery, or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. La.C.C.P. art. 966(C)(1). The burden of proof remains with the movant., La.C.C.P. art. 966(C)(2).
In Dunn v. Pons, 03-1486 (La.App. 5 Cir. 4/27/04), 873 So.2d 811, 813, citing Knight v. Owens, 03-1064 (La.App. 5 Cir. 2/23/04), 869 So.2d 188, this Court stated:
Appellate courts review summary judgments de novo under the same criteria that governs the district court’s consideration of whether 1 ¡¡summary judgment is appropriate. We must consider whether the summary judgment is appropriate under the circumstances of the case and whether there is a genuine or triable issue on which reasonable minds could disagree. A material fact is one that would matter in the trial on the merits.
*944 The general provisions for expropriation can be found in La. R.S. 19:1-15. La. R.S. 19:2 provides that where a price cannot be agreed upon with the owner, a political subdivision of the state may expropriate needed property. Plaintiff, WJMC, is a hospital service district and political subdivision of the state. Further, La. R.S. 46:1060 provides that a “hospital service district shall have the right and power of expropriating property for the purpose of acquiring land for any purpose that it may find necessary in the operation of a hospital service district.” This statute gives WJMC a broad right of expropriation.
After a de novo review of the record, we find no error in the trial court’s granting of the partial summary judgment in favor of WJMC. Accordingly, we affirm the decision of the trial court.

AFFIRMED.

. La.R.S. 19:4 provides that "[ejxpropriation cases shall be tried before the court without a jury, except that a party shall have the right to trial by jury to determine compensation ... If the defendant desires trial by jury he shall file his demand therefor within the time for filing his answer.”

. WJMC’s Petition for Expropriation named only Phillip J. Flettrich, Jr. as a defendant. However, two of the lots which WJMC was seeking to expropriate were owned by Mr. and Mrs. Flettrich.

.The record indicates that Mrs. Flettrich passed away on August 24, 2003 and that David P. Flettrich and Philip J. Flettrich, III, in their capacity as Independent Co-Administrators of the Succession of Marietta Dufrene Flettrich, were substituted for Mrs.'Flettrich. Though the record does not include it, apparently Mr. Philip J. Flettrich, Jr. subsequently passed away and David P. Flettrich and Philip J. Flettrich, III, in their capacity as Independent Co-Administrators of the Succession of Mr. Philip J. Flettrich, Jr., were substituted for Mr. Flettrich.